### 24115. HANCOCK v. HANCOCK.

Argued June 12, 1967—Decided July 6, 1967.

*Floyd H. Wardlow, Jr.*, for appellant.
*John R. Rogers*, for appellee.

Grice, Justice. The grant of a summary judgment decreeing specific performance of an agreement for equal division of certain property, and other relief, is the subject matter of this appeal. The judgment complained of arose from a suit filed in the Superior Court of Upson County by Arvin Marion Hancock against his brother William Sanford Hancock. In granting the summary judgment the trial judge had before him the petition, answer and cross bill, depositions of both parties, and the affidavit of the plaintiff.

The petition, insofar as material here, made the allegations

which follow. The plaintiff is the owner of a tract of land in Turner County which he acquired under his mother's will. This will devised to the defendant a life estate in a house and lot in Upson County, with remainder to his children. A purported agreement between the plaintiff and the defendant to divide equally the property acquired by them under this will is recorded in Turner County. The agreement, under date of January 10, 1966, recites in substance that the mother of the parties died leaving a will which was about to be opened and read; that they, her only heirs, agreed that it should be probated; and that after probate and full administration of her estate, "all of the property left to . . . [plaintiff and defendant] will be equally divided among . . . [them], share and share alike." This agreement was executed upon a misrepresentation of material facts made wilfully to deceive by the defendant, and innocently acted upon by the plaintiff, who was prevented from discovering the truth by the fraud of the defendant. From the circumstances surrounding execution of the agreement there arose a confidential relationship and duty to communicate material facts, and the failure to so communicate constituted fraud. The plaintiff, by reason of the defendant's acts, was led to believe that the purported agreement was terminated and that all rights therein described were disclaimed by the defendant within an hour of its execution, upon reading and consideration of the will. Plaintiff took possession of the Turner County property pursuant to the will, but because of the recorded agreement, his ability to convey title is impaired. The petition prayed, in addition to other relief, that the agreement be canceled so as to remove a cloud upon plaintiff's title to the Turner County property.

The defendant, in his answer and cross bill, made these essential allegations. He admitted that the plaintiff has the legal title to the Turner County property and is in possession of it, but denied that the plaintiff is entitled to more than a one-half interest in it. He admitted execution of the agreement, but denied all allegations as to fraud. He alleged that, in order to terminate family controversy, he and the plaintiff entered into the agreement following the death of their mother, but before her will was opened and read and without either of them having prior

knowledge of its contents. Subsequent to the execution of the agreement, the will was opened and read, and it was then learned by the parties for the first time that plaintiff was devised the fee simple title to the Turner County property and the defendant was devised a life interest only in the Upson County property. Thereafter, the will was probated, executor's deeds were delivered to each covering the respective devises, and the estate was fully administered. In early 1966 plaintiff and defendant agreed by telephone that for the time being, and as a matter of convenience, plaintiff would attend to the renting of the Turner County property and defendant the Upson County property and that they would later account to each other for their respective shares of the rental income. It was not until some time later that the defendant received notice that the plaintiff did not intend to honor their agreement. Ever since it was made, the defendant has stood ready, willing and able to exchange conveyances so as to divide these properties equally, but the plaintiff has refused. The value of the Turner County property is $50,000 and a one-half undivided interest is worth $25,000. The prayers were that the plaintiff specifically perform the agreement by exchange of conveyances or, if title cannot be conveyed to the Turner County property, that he have a money judgment for $25,000; that the plaintiff be required to account to defendant for his one-half share of rents and profits received or to be received from the Turner County property; and that plaintiff be restrained from collecting the farm rental and selling the pecan crop for the current year, from leasing or renting the property for any coming year, and from interfering with the defendant's possession and enjoyment of the Turner County property.

In an affidavit the plaintiff swore "that his brother . . . knew of the disposition made by [their mother] of her property by her . . . will . . . and that this fact gave [his brother] an undue advantage at the time of the purported agreement. . ."

The plaintiff's deposition, as it relates to the issues here, was in substance as follows: that the agreement was the defendant's idea; that it was executed before the will was opened and read;

that his reason for believing, then and now, that the defendant "knew what was going on" is that "he wants me to concede half of this down here is his and he can do as he pleases with it, but, when he dies, I can't touch nothing up yonder, so it's a one sided affair . . . he can't give me half of that property up yonder"; that the defendant's only misrepresentations to induce execution of the agreement were his statement that the Upson County property was worth more than the Turner County property and that "if we would share and share alike that I would get a better deal," and also the fact that the plaintiff received only one copy of the agreement whereas the defendant got two; that he was not prevented from learning the values of the properties and made no effort to find out; and that his allegation as to termination of the agreement was based not upon anything the defendant said, but upon a statement made by the attorney for the estate, who represented both of them, that the defendant could not dispose of the Upson County property since he received only a life estate in it.

The defendant's deposition, in material part, was as follows: that he was 58 years of age; that both properties were valued before the agreement was drawn, the Turner County property at $32,500 and the Upson County property at $12,500, and the plaintiff knew the valuations before execution of the agreement; that at her request, he took his mother to her lawyer's office when she made her will but remained in the lobby and did not discuss the terms of it with her or the lawyer; and that he never saw the will after she signed it and does not "know whether he delivered it to her, or whether she picked it up and put it in the safety deposit box at the bank."

In the summary judgment granted, the trial judge ordered that the plaintiff convey to the defendant a one-half undivided interest in the Turner County property; that the defendant convey to the plaintiff a one-half undivided interest in his life estate in the Upson County property; that each account to the other for his share of rents and profits from such properties; and that each be enjoined from interfering with the other's joint possession of their joint properties, and from renting, leasing or collecting rents therefrom without the other's knowledge and consent.

Our duty here is to determine whether the foregoing pleadings, affidavit and depositions show that there is no genuine issue as to any material fact and that the defendant is entitled to the judgment rendered, as a matter of law. *Code Ann.* § 110-1203 (Ga. L. 1959, p. 234).

1. At the outset we have concluded that there is no issue as to the plaintiff's claim of fraud in the execution of the agreement in question.

(a) No issue of fact is raised as to the plaintiff's allegation that he "was prevented from discovering the truth of the various facts by the fraudulent acts by defendant." The facts upon which this allegation of fraud is based are not disclosed by the plaintiff's affidavit or deposition. In fact, the only evidentiary reference to the plaintiff being prevented from learning any fact was to the contrary. The plaintiff, in his deposition, stated that he was *not* prevented from ascertaining the value of the property, but never made the effort to do so.

(b) Likewise, no issue is shown as to the plaintiff's contention that the agreement was executed upon a "misrepresentation of material facts made wilfully to deceive by the defendant." For support of this assertion, the plaintiff relies upon his statement in his deposition that the defendant told him that the Upson County property was more valuable than the Turner County property, and also that the defendant retained two copies of the agreement while the plaintiff received only one. Yet, as to the first, the plaintiff also stated that he was familiar with both properties, had visited them before execution of the agreement, and knew the purchase price of each and the rental charged for the farm. The second ground of reliance, receipt of unequal number of copies of the agreement, is obviously not meritorious.

(c) Nor is there any showing of fraudulent concealment because of the plaintiff's broad allegation that there was "a confidential relationship and duty to communicate material facts." Our *Code,* § 37-707, provides that "Any relation shall be deemed confidential . . . resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another; or where, from similar relation of mutual confidence, the law requires the utmost good faith;

such as partner, principal and agent, etc." However, no facts whatever as contemplated by this section were either alleged or proved as to any such relationship between the plaintiff and the defendant. This court held in *Crawford v. Crawford*, 134 Ga. 114 (1) (67 SE 673, 28 LRA (NS) 353, 19 AC 932), that "The fact that the plaintiff and the defendant are brothers does not of itself create a confidential or fiduciary relation between them. . . . If . . . [such] relation exists between brothers, it must be shown by proof, and the burden is upon the party asserting the existence of such relationship to affirmatively show the same." Here, the evidence adduced by the depositions shows that these brothers had dealt at arm's length in the execution of the agreement.

2. We have also concluded that no issue is raised as to the plaintiff's claim that this agreement was terminated shortly after it was executed. While he alleged in his petition that the defendant had led him to believe that it was terminated within an hour after its execution, he admitted in his deposition that the defendant made no statement at all as to this. Instead, the plaintiff said that upon the will being read, the attorney representing them had stated that the defendant, with only a life estate in the Upson County property, could not fulfill the agreement. Hence, under the plaintiff's own statement, the defendant did nothing to lead him to believe the agreement was terminated.

3. Furthermore, the facts here show that the agreement, in addition to being valid, is one which equity will specifically perform since land is involved and damages would not be adequate to compensate for nonperformance. *Code* § 37-801.

A different result is not required because of any issue under *Code* § 37-805, which provides that "Mere inadequacy of price, though not sufficient to rescind a contract, may justify a court in refusing to decree a specific performance; so also any other fact showing the contract to be unfair, or unjust, or against good conscience."

(a) There is no issue as to whether the agreement is unfair, in contemplation of *Code* § 37-805, supra, because of the plaintiff's statement in his affidavit that the defendant "knew of the

disposition made" by the will and that this gave him an undue advantage. Nowhere in the affidavit is it recited or shown affirmatively that this statement was made on personal knowledge and that the affiant is competent to testify as to the matters stated in it, as required by *Code Ann.* § 110-1205 (Ga. L. 1959, pp. 234, 235). From all that appears this statement is a mere conclusion, not as to a fact to which the plaintiff could testify. Nothing else appearing, it must be assumed that such conclusion is drawn from plaintiff's prior conclusion in his deposition, to wit, that, in view of the advantageous result of the agreement to the defendant, he "knew what was going on."

(b) As to adequacy of price under *Code* § 37-805, supra, where, as here, a family settlement is involved, "the court will not inquire into the adequacy or inadequacy of the consideration." *Smith v. Smith,* 36 Ga. 184. See also, *West v. Downer,* 218 Ga. 235, 241 (127 SE2d 359).

Therefore, notwithstanding the fact that the defendant is acquiring more by the agreement than he received under the will, while the plaintiff is getting less, the agreement is enforceable.

For the foregoing reasons, the judgment is

*Affirmed. All the Justices concur.*