### 77922. KIENEL v. LANIER.
(378 SE2d 359)

BANKE, Presiding Judge.

The appellee sued the appellant to recover $65,000, plus interest, allegedly owed him pursuant to a promissory note and stock purchase

agreement. The appellant denied liability, contending that he had signed the documents in question in reliance upon the appellee's fraudulent misrepresentations that they did not obligate him to purchase the stock but merely gave him a 60-day option to do so. The appellant maintains that he was justified in relying on these alleged misrepresentations because a confidential relationship existed between himself and the appellee. This appeal is from the grant of the appellee's motion for summary judgment.

The parties were directors, officers, and equal 25 percent shareholders of two corporations — KLM Precision, Inc., and LLMK Leasing Services, Inc. Prior to its incorporation in 1984, at least one of the companies, Leasing Services, Inc., had operated as a partnership in which the two parties had each held a one-fourth interest. The transaction which is the subject of the present action took place in 1986 and involved all of the appellee's stock in both corporations. The purchase agreement and promissory note signed by the appellant unequivocally obligated him to pay the appellee $65,000, plus interest, for the stock within 60 days. The stock was placed in escrow pending such payment; and pursuant to the terms of a security agreement which the appellant executed along with the note and purchase agreement, the appellee was entitled to retain the stock in satisfaction of the indebtedness in the event the appellant defaulted in the payment of the note. However, the two corporations subsequently initiated bankruptcy proceedings, with the result that the appellee had no interest in exercising this remedy. Consequently, when the appellant defaulted on the note, the appellee initiated the present action to recover the purchase price of the stock.

The appellant maintains that during the closing the appellee assured him that he was not obligating himself to purchase the stock by signing the documents in question but was merely obtaining an option to do so. The appellee denies having made any such misrepresentations but contends that, even if such representations were made, the appellant would not have been justified in relying upon them under the circumstances. *Held*:

1. In his brief on appeal, the appellant refers to certain deposition testimony in which he claimed to be "super weak in English." However, in that same deposition he testified that he had graduated from high school and attended college for approximately one year. Thus, the record contains no basis whatever for a finding that he was unable to read and understand what he was signing.

2. "The rule in this state is that where one who can read signs a contract without reading it, he is bound by the terms thereof, unless he can show that an emergency existed at the time of signing that would excuse his failure to read it, or that the opposite party misled him by an artifice or device which prevented him from reading it, or

that a fiduciary or confidential relationship existed between the parties upon which he relied in not reading the contract." *Cochran v. Murrah*, 235 Ga. 304, 305 (219 SE2d 421) (1975), citing *Morrison v. Roberts*, 195 Ga. 45 (23 SE2d 164) (1942). See also *Conklin v. Liberty Mut. Ins. Co.*, 240 Ga. 58, 59-60 (239 SE2d 381) (1977).

A fiduciary or confidential relationship arises "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." OCGA § 23-2-58. The law recognizes "that a confidential relationship may exist between businessmen, depending on the facts." *Cochran v. Murrah*, supra, 235 Ga. at 307. However, the mere fact that two persons have transacted business in the past based on oral commitments or understandings and that they have come to repose trust and confidence in each other as the result of such dealings is not sufficient, in and of itself, to warrant a finding that a confidential relationship exists between them within the contemplation of the Code section. See, e.g., *Davis v. Carpenter*, 247 Ga. 156 (274 SE2d 567) (1981); *Dixie Belle Mills, Inc. v. Specialty Machine Co.*, 217 Ga. 104, 105-6 (120 SE2d 771) (1961). "The mere fact that one reposes trust and confidence in another does not create a confidential relationship. 'In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone.' *Dover v. Burns*, 186 Ga. 19, 26 (196 SE 785) (1938)." *Lewis v. Alderman*, 117 Ga. App. 855 (1) (162 SE2d 440) (1968).

In support of his contention that the evidence in this case would authorize the inference that a confidential relationship existed between himself and the appellee, the appellant places great reliance on this court's decision in *Vitner v. Funk*, 182 Ga. App. 39 (2) (354 SE2d 666) (1987). There, a physician sued three other physicians, with whom he had formerly practiced medicine as a one-third shareholder in a professional corporation, to recover damages for the alleged wrongful appropriation of his share in a business venture undertaken by the parties involving the establishment of a "birthing center." Although the plaintiff contributed both time and financial support towards the venture, he was not given any stock in the corporation which was ultimately formed to operate the birthing center. We held that a jury was authorized to award him damages under such circumstances for the breach of an implied partnership agreement, concluding that "the entire business structure of the parties, their interactions and dealings over the course of several years and their common goal, all furnished a basis for a jury to find a relationship in fact which justified the reposal of confidence on the part of one party and good faith on the part of the others." Id. at 42.

The case before us is distinguishable from *Vitner v. Funk* in that it does not involve a transaction in which the parties joined together, as partners, promoters, joint venturers, or otherwise, to achieve a common business objective. Rather, the parties were engaged in a transaction *with each other* in an effort to further their own separate business objectives. Under such circumstances, the appellee was not under any duty to represent or advance the appellant's interests. Compare *Crosby v. Rogers*, 197 Ga. 616 (30 SE2d 248) (1944) (wherein the parties jointly provided the funds to purchase certain real estate, but the defendant procured a deed naming himself as the sole grantee). Cf. *Lariscy v. Hill*, 117 Ga. App. 152, 154 (159 SE2d 443) (1968) (holding that the director of a corporation, in transactions with other directors involving the purchase of sale of the corporation's stock, is not under a fiduciary duty to disclose all material facts relative to the value of the corporation's property, as would be the case if he were dealing with a shareholder who was not a director).

Although the parties may have owed each other a fiduciary duty in other respects, there is no basis in this case for an inference that a fiduciary or confidential relationship existed between them *with respect to the transaction at issue*. It follows that the appellant was not entitled to disregard the plain language of the documents which he was signing. Accord *Charles v. Simmons*, 215 Ga. 794, 796 (113 SE2d 604) (1960); *Thomas v. Eason*, 208 Ga. 822, 827 (3) (69 SE2d 729) (1952). None of the remaining cases cited by the appellant can be considered authority for a contrary conclusion. In *Cochran v. Murrah*, supra, the parties were not business associates. Rather, the plaintiff was a farm laborer who had worked for the defendant for many years, living in a house provided by him and accepting without question whatever wages the defendant determined were due him. An employer-employee relationship was also involved in *Capriulo v. Bankers Life Co.*, 178 Ga. App. 635 (344 SE2d 430) (1986), where the plaintiff was persuaded by his former boss to leave his existing job and come to work for the employer for whom the former boss now worked. We held that the plaintiff was entitled under the circumstances to rely on assurances made by his former boss to the effect that the new employer's group health insurance plan would cover a pre-existing medical condition from which he was known to suffer. The relationship under consideration in *Sutton v. McMillan*, 213 Ga. 90 (97 SE2d 139) (1957), was that of brother and sister and was marked by a great disparity in education and business experience. The case of *Sanders v. Looney*, 247 Ga. 379 (276 SE2d 569) (1981), similarly involved a close blood relationship, as well as application of the principle that " '(E)quity will not permit a person who is *or is about to become*, an administrator to profit from his transactions with the hiers to their prejudice.' (Emphasis supplied.) (Cit.)" Id. at 381.

3. The appellant's contention that he did not understand the legal effect of the documents which he signed is, in any event, refuted by undisputed evidence that after signing the closing documents, but prior to his default on the promissory note, he contracted to sell the shares of stock in question to the corporations' remaining shareholder, pursuant to a written agreement in which he claimed unequivocally to be the owner of the shares. The evidence in this case thus affords no basis upon which the appellant can escape his obligation under the note and stock purchase agreement, with the result that the trial court did not err in granting the appellee's motion for summary judgment.

*Judgment affirmed. Birdsong and Beasley, JJ., concur.*

DECIDED JANUARY 24, 1989 —
REHEARING DENIED FEBRUARY 7, 1989 —

*Alston & Bird, G. Conley Ingram, Walter G. Elliott II*, for appellant.

*Troutman, Sanders, Lockerman & Ashmore, Scott F. Norberg, Mary G. Diehl*, for appellee.