A96A0804. HARISH et al. v. RAJ et al.
(474 SE2d 624)

RUFFIN, Judge.

Drs. Gorli Harish, D. M. Jayaram and Ujjal Sandhu (collectively "plaintiffs") sued Ranjan Raj and Gurubasava Raj (collectively "defendants"), alleging defendants fraudulently conspired to obtain their shares of Universal Business Partners, Inc. ("Universal") for significantly less than its true market value in violation of the Georgia RICO statute (OCGA § 16-14-1 et seq.). The complaint also alleged fraud and deceit and breach of fiduciary duty. The trial court granted summary judgment to defendants, finding (1) defendants did

not owe a fiduciary duty to plaintiffs since they were co-directors of Universal, and (2) plaintiffs failed to show any exercise of ordinary care on their part. Plaintiffs appeal from the trial court's order granting summary judgment. For reasons which follow, we affirm.

The record shows that in July 1987, Harish approached Ranjan Raj about investing in an Atlanta family planning clinic that he and two other doctors were considering acquiring. The parties incorporated Universal for the purpose of purchasing and operating the clinic. Universal paid $231,000 for the clinic. All parties were members of the Universal board of directors, and Harish was chairman of the board of directors and medical director for the clinic. As medical director, Harish visited the clinic every five to six weeks, inspected its financial books, and was encouraged to ask questions about the business. Jayaram also visited Atlanta several times to inspect the business and financial statements. Ranjan Raj became president and chief executive officer and moved to Atlanta while the plaintiffs remained in West Virginia. Gurubasava Raj was Universal's secretary and treasurer.

Universal obtained a certificate of need to operate the clinic. From 1987-1990 defendants operated the clinic and kept plaintiffs apprised of all problems. The clinic earned only marginal profits. The parties knew by late 1988 that MARTA planned to condemn the building where the clinic was located.

Northside Hospital was denied a certificate of need to set up a multi-specialty surgery center in 1990 and began inquiring into purchasing an existing permitted center. In the fall of 1990, Northside Hospital contacted Ranjan Raj about purchasing Universal's clinic. In September 1990, Harish asked Raj if there were any buyers interested in the clinic, and Raj informed him Northside Hospital was interested. According to Harish, Raj made Northside Hospital's interest sound insignificant and not to be taken seriously. Harish informed the other two plaintiffs of the offer. Sandhu obtained the name and telephone number of the Northside Hospital representative from Raj. Sandhu contacted Northside Hospital and conducted his own negotiations with the consent of the other two plaintiffs. Northside Hospital responded with an offer of $350,000, and Sandhu learned Northside would increase the offer to $450,000 or $500,000. Plaintiffs desired to sell the clinic since Ranjan Raj had been unable to attract physicians to the clinic or to make the clinic profitable. Ranjan Raj desired to expand the clinic's services since his income growth depended upon expansion. Raj spoke with some individuals about establishing a multi-specialty surgery center. In addition, the parties engaged in heated discussions about the potential sale, ultimately hiring attorneys to protect their divergent interests.

Plaintiffs were eager to sell to Northside Hospital and gave

Ranjan Raj an ultimatum: agree to sell the clinic to Northside Hospital at the price settled on or agree to buy their stock in Universal. Plaintiffs never questioned why Northside was interested in the clinic and never attempted to negotiate a higher sale price. Moreover, plaintiffs made no effort to discover if any other entity was interested in purchasing the clinic and made no effort to determine the clinic's value. Defendants purchased plaintiffs' stock for $255,000. A mutual release was executed with the agreement for purchase and sale of stock. Raj admitted he may have formed the intent to negotiate with other parties for the sale of the clinic prior to completing the above transaction. However, plaintiffs released defendants to do what they wished with the company, including selling to Northside.

After plaintiffs sold their interest, defendants again began negotiating with Northside Hospital. Among other things, Raj demanded $1.9 million plus other financial incentives. Raj claims this price was based on profits he could have earned had he expanded the clinic to a multi-specialty surgery center. Ultimately, defendants sold Universal to Northside Hospital for approximately $2.2 million. Northside Hospital explained its willingness to increase its offer to $2.2 million in mid-1991 because of both the quickly approaching acquisition of the clinic property by MARTA and the realization that they could not purchase another clinic's certificate of need and transfer it across the county line.

1. In their first enumeration of error, plaintiffs contend the trial court erred in concluding, as a matter of law, that defendants did not owe them a fiduciary duty. We disagree.

It is well established that "the mere fact that one reposes trust and confidence in another does not create a confidential relationship. In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone." (Citations and punctuation omitted.) *Kienel v. Lanier*, 190 Ga. App. 201, 203 (2) (378 SE2d 359) (1989). Moreover, courts have held that a confidential and fiduciary relationship is not presumed between brothers or close, personal friends, but "must be shown by proof, and the burden is upon the party asserting the existence of such relationship to affirmatively show the same." (Citation and punctuation omitted.) *Hancock v. Hancock*, 223 Ga. 481, 486 (1) (c) (156 SE2d 354) (1967); *Charles v. Simmons*, 215 Ga. 794 (1) (113 SE2d 604) (1960).

Thus, while Harish and Ranjan Raj grew up in the same community and were close friends, this fact alone does not support the finding of a confidential or fiduciary relationship. In this case, the parties knew their interests were adverse, were involved in heated discussions regarding the sale of the clinic, contested the sale of the clinic with the help of separate attorneys to protect their individual inter-

ests, separately negotiated with Northside Hospital regarding a potential sale, and ultimately resolved the dispute with the stock sale. Thus, it is clear the parties dealt at arms length in the execution of the stock purchase agreement and mutual release. This is not a case where the plaintiffs blindly relied on representations from a trusted friend or business partner. "Although the parties may have owed each other a fiduciary duty in other respects, there is no basis in this case for an inference that a fiduciary or confidential relationship existed between them *with respect to the transaction at issue*." (Emphasis in original.) *Kienel*, supra at 204.

In addition, the trial court correctly concluded that defendants, as directors of Universal, had no duty to disclose all material facts relative to the value of the corporate property to plaintiffs, who were also directors of Universal. See id.; *Lariscy v. Hill*, 117 Ga. App. 152 (1) (159 SE2d 443) (1968). "A director in dealing with another stockholder for the purchase of his stock is under the same duties as partners, agents, and other fiduciaries to make a full disclosure of all material facts relative to the value of the corporate property under his control, known to him and unknown to the selling stockholders. . . . *A director in buying the stock is not under such duty to the corporation or the other directors*." (Emphasis supplied.) *King Mfg. Co. v. Clay*, 216 Ga. 581, 586 (1) (118 SE2d 581) (1961). "Since the petition shows on its face that the sale was between co-directors of the corporation, and the only allegation made as to the plaintiff[s'] failure to ascertain the insolvency of the corporation being that [they] resided in another locality and 'took no active part in the corporation,'" the trial court did not err in granting defendants' motion for summary judgment. *Lariscy*, supra at 154.

Based on the foregoing, the trial court did not err in concluding defendants did not owe plaintiffs a fiduciary duty.

2. In their second enumeration of error, plaintiffs assert the trial court erred in concluding, as a matter of law, that they did not exercise ordinary diligence and that there were no questions of fact regarding the exercise of diligence. In Georgia, if the allegedly concealed fact is discoverable through the exercise of ordinary care, there is no fraud. *Southern Intermodal Logistics v. Smith & Kelly Co.*, 190 Ga. App. 584, 586 (1) (379 SE2d 612) (1989). Fraud is not committed if the allegedly defrauded party "by the exercise of the slightest degree of diligence could have prevented the results of fraud alleged to have been perpetrated upon him." *Charles*, supra at 796.

In the present case, plaintiffs failed to exercise ordinary diligence by independently verifying the value of their stock before selling it. Therefore, they were barred from asserting an action based on fraud. See *Henderson v. KM Systems*, 188 Ga. App. 893, 899 (3) (374 SE2d 550) (1988), overruled on other grounds, *Cohen v. William*

*Goldberg & Co.*, 262 Ga. 606 (2) (a) (423 SE2d 231) (1992). See also *Bragg v. Sirockman*, 169 Ga. App. 643, 644 (2) (314 SE2d 478) (1984) (affirming summary judgment to the defendant since the plaintiff failed to exercise ordinary diligence and was "on an equal basis with [the defendants] in the corporation at the time the sale of the stock took place" and was also an officer and director of the corporation).

While plaintiffs contend defendants convinced them over the years that the business was worthless, and obtained an appraisal showing the business was worth less when they purchased it, they have failed to present any evidence showing defendants interfered with their ability to exercise ordinary diligence or prevented plaintiffs from ascertaining the value of their stock. Plaintiffs state "it was obvious to Harish that Ranjan Raj did not want to reveal the information that he possessed [about Northside's interest in purchasing the clinic]," and they not only conducted their own negotiations with Northside Hospital, but also hired attorneys to represent their individual interests. Yet plaintiffs made no effort to discover why Northside Hospital wanted to purchase the clinic, made no effort to discover if any other entity had an interest in purchasing the company, and made no effort to ascertain the value of their stock. This forecloses plaintiffs' suit based on fraud. See *Hancock*, supra at 485.

As appellate judges who examine the record for error, we must be ever cognizant of the special relationship error has with harm. If there is neither error nor harm, the trial court must be affirmed.

Under the circumstances of this case, the trial court did not err in concluding plaintiffs failed to exercise ordinary diligence.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED JULY 11, 1996.

*Weinstock & Scavo, Michael Weinstock, Richard J. Capriola*, for appellants.

*Lawson, Davis & Pickren, G. Thomas Davis, Alison H. Price*, for appellees.