A96A2051. ALLEN et al. v. HUB CAP HEAVEN, INC.
A96A2052. HUBCAP MASTERS INTERNATIONAL, INC. v. HUB CAP HEAVEN, INC.
(484 SE2d 259)

JOHNSON, Judge.

Hub Cap Heaven, Inc. sued Clayton Allen, Barbara Hooper, Xanthus Holdings, Inc., and Hubcap Masters International, Inc., alleging fraud, theft of trade secrets, and breach of nondisclosure and non-competition clauses in a franchise agreement. Hub Cap Heaven sought damages and an interlocutory injunction to prohibit the

defendants from franchising, operating, or advising others about the operation of stores selling hubcaps, wheels, and related automotive accessories. The superior court granted the injunction with no geographic limits, but ruled that Allen and Hooper may work in one such store more than 50 miles outside the Atlanta city limits. Case No. A96A2051 is an appeal from the injunction by Allen, Hooper, and Xanthus. Case No. A96A2052 is Hubcap Masters' appeal from both the injunction and a later order denying its request for written findings of fact and conclusions of law. We reverse the grant of the injunction in both appeals, and in Case No. A96A2052 we affirm the order entered thereafter.

We may not reverse the grant or denial of preliminary injunctive relief absent an abuse of discretion, "or, as alternatively stated, unless there was no evidence on which to base the ruling." (Citations and punctuation omitted.) *Glen Oak v. Henderson*, 258 Ga. 455, 456 (1) (369 SE2d 736) (1988). See OCGA § 9-5-8. When the evidence is not in material conflict, however, the applicable rules of law cannot be avoided on the basis of discretion. *American Bldgs. Co. v. Pascoe Bldg. Systems*, 260 Ga. 346, 348 (1) (392 SE2d 860) (1990). Our review of the evidence, conducted with these principles in mind, shows:

Hub Cap Heaven franchises businesses that sell wheels, hubcaps, and other automotive accessories. Hooper bought a franchise to open a store in Atlanta, and transferred it to Xanthus Holdings, Inc., of which she is the sole stockholder. The franchise agreement provided in relevant part that: (1) The term of the agreement was five years from the opening of Hooper's store, which was July 1, 1993; (2) Hooper would not compete with Hub Cap Heaven anywhere during the term of the agreement, or within 50 miles of "the location franchised" for one year after the agreement was terminated; (3) The noncompetition covenant would survive transfer of the franchise; (4) Hooper would not disclose Hub Cap Heaven's business methods to third parties, during the term of the agreement or afterwards; (5) Hooper had to obtain the permission of Hub Cap Heaven to sell her franchise. Hub Cap Heaven could withhold permission if, among other things, Hooper was in default of the franchise agreement. Default was defined to include failing to comply with any contract requirements and engaging in a competing business.

Allen participated with Hooper in the franchise negotiations. For purposes of this appeal, Allen admits he signed a franchise agreement-identical to Hooper's. Hooper later married Allen and put him on her franchise's payroll.

Hooper and Allen received training from Hub Cap Heaven. Allen then helped others set up similar businesses in other cities. These businesses operated under the name Hubcap Masters, though there

was no formal Hubcap Masters umbrella organization. In 1994, Xanthus rented a warehouse under the name Atlanta Wheel and Cover Supply and began to sell inventory to the Hubcap Masters stores.

Xanthus sold its Hub Cap Heaven franchise June 26, 1995, with Hub Cap Heaven's permission. Hub Cap Heaven now claims this permission was based on promises by Hooper and Allen that they were not involved with Hubcap Masters; that they would not compete with Hub Cap Heaven; that they would sign a noncompetition agreement; and that they would buy a Hub Cap Heaven franchise in Naples, Florida.

After the sale, Allen's uncle and his uncle's accountant formed Hubcap Masters International, Inc. Hubcap Masters' president and vice president are owners of Hubcap Masters stores. Hubcap Masters hired Allen to sell franchises, but he is not a stockholder or corporate officer. Hub Cap Heaven contends, however, that Hubcap Masters is essentially Allen's alter ego. In support of this contention, Hub Cap Heaven points to the deposition testimony of James Scarborough, the person named as Hubcap Masters' president in its corporate documents, showing he has little or nothing to do with corporate operations.

The superior court's injunction order recites the evidence the judge considered, and states that the injunction should be granted because Hub Cap Heaven has a substantial likelihood of success on the merits and no adequate remedy at law, and because granting it would further public policy against fraud. On appeal, Hub Cap Heaven urges four separate legal grounds for the injunction: Violation of the Georgia Trade Secrets Act, OCGA § 10-1-760 et seq.; breach of a confidential relationship; breach of the nondisclosure and noncompetition covenants contained in the franchise agreement; and fraud. The appellants correctly contend none of these grounds supports the grant of the interlocutory injunction.

1. In Case No. A96A2052, Hubcap Masters has presented no argument and cited no authority in support of its allegation that the trial court erred in refusing to enter findings of fact and more specific conclusions of law. Hubcap Masters has therefore abandoned this enumeration. See Court of Appeals Rule 27 (c) (2). The remaining divisions address issues common to both appeals.

2. The Georgia Constitution accords the Supreme Court of Georgia exclusive appellate jurisdiction in equity cases. Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (2). Though this case involves an injunction, resolution of the appeal turns on legal issues. We therefore have jurisdiction over the case. See *Firearms Training Systems v. Sharp*, 213 Ga. App. 566 (445 SE2d 538) (1994).

3. Appellants claim the trial court could not validly base the injunction on the Georgia Trade Secrets Act. They claim all the sup-

posedly secret business methods of Hub Cap Heaven are actually common practices, and are therefore not protected by the Act. Hub Cap Heaven responds by pointing to three categories of information it claims are trade secrets.

(a) Hub Cap Heaven claims that the unique way in which it combines otherwise mundane services gives it an advantage over its competition. Specifically, Hub Cap Heaven claims to be the first business to sell automotive trim pieces to body shops and car dealers by taking trucks full of unordered parts on regular sales routes, hoping to convince each dealer or body shop on the route to buy parts off the trucks.

Floyd Davidson, president of Hub Cap Heaven, admitted other businesses in the United States used similar methods, though they were not franchised. Moreover, by its very nature this "secret" information is conveyed to every customer on a sales route. Hub Cap Heaven has not made this information "the subject of efforts that are reasonable under the circumstances to maintain its secrecy," OCGA § 10-1-761 (4) (B). Accordingly, it may not be protected as a trade secret. See *Equifax v. Examination Mgmt. Svcs.*, 216 Ga. App. 35, 39-40 (2) (453 SE2d 488) (1995).

(b) Hub Cap Heaven also claims it gave Allen information that would allow him to contact suppliers not generally known to competitors. OCGA § 10-1-761 (4) provides that a "list of actual or potential customers or suppliers which is not commonly known by or available to the public" can be a trade secret in some circumstances. Under this statute, however, "only tangible lists of customers and suppliers are the property of the employer and warrant protection as trade secrets. . . . [U]tilization of personal knowledge may be forbidden through the use of restrictive covenants, but not under the Trade Secrets Act." (Citations omitted.) *DeGiorgio v. Megabyte Intl.*, 266 Ga. 539, 540 (3) (468 SE2d 367) (1996). Because Hub Cap Heaven does not claim Allen misappropriated a tangible supplier list, and his personal knowledge of Hub Cap Heaven's suppliers is not a trade secret, this argument has no merit.

(c) Hub Cap Heaven claims it told Allen which cities it considered good candidates for new franchises. While the parties have cited no cases deciding whether such information can be a trade secret, and our research has revealed none, we hold that oral information of this nature should be accorded even less protection under the Trade Secrets Act than customer lists. This is because a customer list reveals the identities of known buyers of the parent company's goods or services, while the name of a city reveals only the general location of unknown potential buyers. Because the specific identities of known customers are not trade secrets, *DeGiorgio*, supra, it follows that the general locations of unknown potential customers likewise

cannot be considered trade secrets.

None of the information Hub Cap Heaven claims it needs to protect qualifies as a trade secret. Therefore, the Trade Secrets Act does not support the grant of the interlocutory injunction.

4. Appellants correctly maintain the injunction cannot be upheld as a remedy for breach of a confidential relationship, because no such relationship existed between them and Hub Cap Heaven.

A relationship is confidential when "one party is so situated as to exercise a controlling influence over the will, conduct, or interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." OCGA § 23-2-58. "[T]he mere fact that one reposes trust and confidence in another does not create a confidential relationship. . . . [A] confidential and fiduciary relationship . . . must be shown by proof, and the burden is upon the party asserting the existence of such relationship to affirmatively show the same." (Citations and punctuation omitted.) *Harish v. Raj*, 222 Ga. App. 248, 250 (1) (474 SE2d 624) (1996).

The franchise contract expressly provided for an independent contractor relationship between Hub Cap Heaven and its franchisees. Hub Cap Heaven has cited no case finding a confidential relationship in such circumstances. Moreover, even if Hub Cap Heaven could show the parties "owed each other a fiduciary duty in other respects, there is no basis in this case for an inference that a fiduciary or confidential relationship existed between them *with respect to the transaction at issue*." (Emphasis in original.) *Kienel v. Lanier*, 190 Ga. App. 201, 204 (2) (378 SE2d 359) (1989). The transaction in this case, like the one in *Kienel*, was not one in which the parties "joined together as partners, promoters, joint venturers, or otherwise, to achieve a common business objective. Rather, the parties were engaged in a transaction *with each other* in an effort to further their own separate business objectives. Under such circumstances, [one party] was not under any duty to represent or advance the [other's] interests. [Cit.]" (Emphasis in original.) Id. Hub Cap Heaven therefore cannot show a confidential relationship with respect to this transaction.

5. Appellants claim the trial court could not validly base the injunction in this case on the noncompetition clause of the franchise agreement. For the reasons set out below, we agree.

Under Ga. Const. of 1983, Art. III, Sec. VI, Par. V (c), a contract "which may have the effect of or which is intended to have the effect of defeating or lessening competition, or encouraging a monopoly" is

"unlawful and void."[1] Nevertheless, not all noncompetition covenants are held to run afoul of this constitutional provision. A noncompetition covenant entered into in connection with a franchise or employment contract is enforceable, but only where it is strictly limited in time and territorial effect and is otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the franchisee. See *Owens v. RMA Sales,* 183 Ga. App. 340, 341 (1) (358 SE2d 897) (1987). This test of duration, territorial coverage, and scope of activity is not an arbitrary rule, but a helpful tool in examining the reasonableness of the particular factual setting to which it is applied. See *Watson v. Waffle House,* 253 Ga. 671, 673 (2) (324 SE2d 175) (1985). Unlike a noncompetition agreement entered into in connection with the sale of a business, one entered into in connection with a franchise contract cannot be "blue-penciled" by the courts to enforce valid terms if some terms of the covenant are invalid. Id. at 671-672.

(a) Under the noncompetition covenant, neither Hooper nor Allen was to "either directly or indirectly, for himself, or on behalf of any other person, persons, partnership or corporation, own, maintain, engage in, or participate in the operation of any HUB CAP HEAVEN, INC. type business." Ordinarily, proscription of such a broad scope of competing activity renders a noncompetition clause void. See *Fields v. Rainbow Intl. &c.,* 259 Ga. 375, 376 (380 SE2d 693) (1989). However, where the former franchise owner was the "heart and soul" of the franchised business, and gained knowledge which the parent company has a reasonable stake in protecting, a covenant proscribing such a wide scope of activity may be reasonable if it prohibits competition only in a small geographic area, and for a short period of time. See *Waffle House,* supra at 673.

Davidson stated he taught Hooper and Allen things about his business which would have taken them five to six years to learn on their own. While such information may not rise to the level of trade secrets, it is comparable to the information gained by the former franchise owners in *Waffle House,* in which a limited noncompetition covenant was held to be reasonable. We therefore proceed to consider the territorial and time limitations of the noncompetition covenant before us.

(b) The noncompetition covenant in the instant case purports to be effective for one year after the franchise is terminated. The franchise termination date was originally to be July 1, 1998, but Hooper sold the franchise with Hub Cap Heaven's permission on

---

[1] OCGA § 13-8-2.1, providing otherwise in certain situations, has been held unconstitutional by the Supreme Court of Georgia. *Jackson & Coker, Inc. v. Hart,* 261 Ga. 371 (405 SE2d 253) (1991).

June 26, 1995. Allen, Hooper, Xanthus, and Hubcap Masters argue that the noncompetition covenant therefore expired of its own terms on June 26, 1996. Hub Cap Heaven contends the covenant is in effect until July 1, 1999, one year from the termination date originally agreed on, which in this case is approximately four years after the parties terminated their relationship.

We need not decide which is the correct construction because the injunction must be vacated under either interpretation. If the covenant is construed as Hub Cap Heaven urges, then it is unenforceable because it is overbroad. If the covenant is construed as the appellants urge, then even if the trial court in February 1996 could have entered an injunction valid until June 26, 1996, it was error to enter an injunction effective past that date, which is when the covenant expired by its own terms.

Noncompetition covenants of shorter duration than four years, even covering a smaller area than the unlimited geographic restriction imposed in this case, have repeatedly been held void as overbroad. For instance, in *T.E. McCutcheon Enterprises v. Snelling & Snelling, Inc.*, 232 Ga. 609, 610a (2) (212 SE2d 319) (1974) the Supreme Court of Georgia refused to enforce a noncompetition covenant purporting to be effective for two years within ten miles of the franchise area's perimeter, and one year within five miles of any other franchise. In *Richard P. Rita Personnel Svcs. Intl. v. Kot*, 229 Ga. 314, 315, 317 (191 SE2d 79) (1972) a covenant prohibiting competition for two years in Fulton, Cobb, and DeKalb counties, "or in any territorial area in which a franchise has been granted" was held void. In *WAKE Broadcasters v. Crawford*, 215 Ga. 862 (114 SE2d 26) (1960), the Supreme Court invalidated a noncompetition covenant that claimed to be effective for 18 months within 50 miles of Atlanta or anywhere else the company operates. And in *Purcell v. Joyner*, 231 Ga. 85, 86-88 (2) (200 SE2d 363) (1973) a covenant not to compete for three years in sixteen Georgia counties and one South Carolina county was invalidated. We therefore hold the noncompetition clause before us, construed as Hub Cap Heaven urges, overbroad and void. Under either possible interpretation, this covenant will not support the continuation of the injunction after June 26, 1996.

6. Appellants contend the nondisclosure covenant is void because it has no time limit. We agree with this contention as well. A nondisclosure clause with no time limit is unenforceable as to information that is not a trade secret. See *U3S Corp. &c. v. Parker*, 202 Ga. App. 374, 378 (2) (b) (414 SE2d 513) (1991). Because the covenant does not arise out of the sale of a business, we may not "blue-pencil" a term which is overbroad to impose a reasonable limit. Compare *Drumheller v. Drumheller Bag & Supply*, 204 Ga. App. 623, 626-627 (1) (420 SE2d 331) (1992).

7. Appellants argue the trial court could not have correctly based the injunction in this case on any alleged fraud. This argument is also correct. To establish a claim of fraud, one must demonstrate the existence of five elements: (1) A false representation, (2) made with knowledge of its falsity, (3) to induce one to act or refrain from acting, (4) justifiable reliance on the representation, and (5) damages. See *Watson v. Zurich-American Ins. Co.*, 221 Ga. App. 4, 5 (1) (470 SE2d 684) (1996).

Hub Cap Heaven's fraud claim fails because it has not shown damages resulting from a false representation made by the appellants. Hub Cap Heaven has only 19 stores in 13 states, and has pointed to no evidence in the record that the appellants planned to establish Hubcap Masters stores in any area where Hub Cap Heaven has an existing store or expansion plans. In fact, Davidson testified he has no interest in placing Hub Cap Heaven franchises in several cities he discussed with Allen.

Davidson's claim that Hub Cap Heaven stores in Jacksonville, Florida and Atlanta have lost business to Hubcap Masters stores in no way establishes damages which would be remedied by this particular injunction. The operators of those stores have already been trained by Allen. Hub Cap Heaven has pointed to no evidence that any of the defendants have or plan to have any further involvement in operating those stores, and the injunction does not require those or any other existing Hubcap Masters stores to cease doing business.

This is not to say that Hub Cap Heaven cannot establish damages, only that it has not done so, even to the preliminary level needed to justify a temporary injunction. See generally *Miami Valley &c. v. Southern Orchard Supply Co.*, 214 Ga. App. 624, 626 (448 SE2d 482) (1994). Therefore, the injunction in this case cannot be justified on the ground of fraud.

8. Though whether to grant an interlocutory injunction is within the discretion of the superior court judge, "[u]nder the discretion vested in him, no judge has authority to disregard or even to impair any acknowledged or established right of a party by its exercise, and if he does so, he abuses that discretion. The power ought to be exercised in favor of the party having the legal right. . . ." (Citation and punctuation omitted.) *Johnson v. Durrence*, 136 Ga. App. 439, 441 (221 SE2d 652) (1975). Because Hub Cap Heaven has not shown that the appellants violated any of Hub Cap Heaven's legal rights, it was error for the trial court to grant the injunction.

Moreover, though it is not necessary for us to reach this issue in order to decide this case, we note that it is error to grant an injunction when the party seeking it has an adequate remedy at law. *Housing Auth. v. MMT Enterprises*, 267 Ga. 129 (1) (475 SE2d 642) (1996); see OCGA § 23-1-4. Even if the appellants were to compete with Hub

Cap Heaven in violation of an enforceable agreement, Hub Cap Heaven failed to show that the adverse economic effects of that competition could not be quantified with enough specificity to support an award of money damages.

We have examined every possible basis for the injunction and found none valid. It is therefore vacated.

*Judgment affirmed in part and reversed in part in Case No. A96A2052. Judgment reversed in Case No. A96A2051. McMurray, P. J., and Ruffin, J., concur.*

DECIDED MARCH 5, 1997 —
RECONSIDERATION DENIED MARCH 18, 1997 — 

*Hassett, Cohen, Beitchman & Goldstein, Lee S. Goldstein*, for Allen et al.

*Wilson, Brock & Irby, Richard W. Wilson, Jr., James S. Teague, Jr.*, for Hubcap Masters International, Inc.

*Drew, Eckl & Farnham, Peter B. Barlow, J. William Haley, Alston & Bird, G. Conley Ingram, Jay D. Bennett, Timothy G. Werner*, for Hub Cap Heaven, Inc.