### A97A1982. GIBBS v. DODSON.
(492 SE2d 923)

BIRDSONG, Presiding Judge.

This appeal arises from a suit for damages for breach of fiduciary relationship filed by appellant/plaintiff H. Barry Gibbs and from a counterclaim for imposition of a constructive trust for the benefit of cross-appellant/defendant Charles L. Dodson. Gibbs appeals from the order of the superior court granting summary judgment to Dodson and from the order denying Gibbs' summary judgment motion. Gibbs enumerates as error the grant of summary judgment to Dodson on all counts of Gibbs' complaint and the denial of summary judgment to Gibbs as to Count 1 of Dodson's counterclaim seeking a constructive trust on an insurance policy, which Gibbs claims he owns, insuring Dodson's life.

Gibbs and Dodson each owned 50 percent interest in a general partnership and in two corporations (Rose Haven Chapel, Inc. and Rose Haven Cemetery, Inc.), which legal entities owned and operated the Rose Haven Funeral Home and the Rose Haven Cemetery. In

early 1991, both Dodson and Gibbs purchased life insurance policies naming the other as policy owner and beneficiary; the evidence is in conflict as to the reason for this purchase. In March 1992, both policies were pledged as collateral on an SBA loan; following the sale of the funeral business, the SBA loan was satisfied by Dodson. From date of issue through the first quarter of 1995, both policies were paid for by Rose Haven Chapel, Inc.; thus, for a period of time, Rose Haven Chapel, Inc. paid premiums on the policy on Dodson's life after Dodson purchased Gibb's interest in the funeral business. From the inception of the Dodson policy through on or about March 29, 1995, Rose Haven Chapel, Inc. paid premiums on this policy in the amount of $21,645.71. Thereafter, and at least through the date of his affidavit (September 12, 1996), Gibbs paid the premium on the policy on Dodson's life. (Apparently, after the assignment of these two policies to the SBA, Gibbs allowed the policy insuring his own life to lapse and replaced it with another policy which Dodson did not own. Thus, Dodson was no longer listed as the beneficiary or owner of any policy on the life of Gibbs, while Gibbs remained the listed owner and beneficiary of the policy on Dodson's life.) In February 1995, after the SBA loan was satisfied and a demand was made on Gibbs for the return of the policy on Dodson's life, Gibbs asserted a claim of ownership on the policy and declined to return it. In his counterclaim, Dodson asserts inter alia that a constructive trust for his benefit should be imposed on the policy insuring his life.

In late 1993, Dodson informed Gibbs that he wanted Gibbs to give up his interest in the funeral business. On March 4, 1994, Dodson and Gibbs executed a Put/Call Agreement which detailed the procedure for buying out each other's interest in the business. Gibbs initially controlled the option to purchase Dodson's business interest under the terms of the agreement. However, on October 2, 1994, the option reverted back to Dodson. Two weeks before Gibbs' option expired, Stewart Enterprises representatives visited the funeral home unannounced and notified Dodson of its desire to purchase Rose Haven; Dodson had not previously met with these representatives. Dodson informed the agents of Stewart Enterprises that he lacked the power to sell the business at that time but might be able to do so at a later date. Dodson did not inform Gibbs of the inquiry by Stewart Enterprises. Subsequently, Gibbs elected not to exercise his buy-out option; on December 1, 1994, Dodson signed a promissory note with Stewart Enterprises and obtained the financial backing to buy out Gibbs. To facilitate closing, a mutual release was executed by Dodson and Gibbs on December 1, 1994. On February 12, 1995, except for certain assets not here at issue, Dodson sold the funeral business assets to a subsidiary of Stewart Enterprises. As the SBA loan was satisfied as a result of this sale, the SBA released their lien

on the policy insuring Dodson's life. This policy was not listed as an asset excluded from the sale under the terms of the applicable purchase agreement.

Gibbs filed suit averring a breach of fiduciary duty due to Dodson's failure to inform him of Stewart Enterprises interest in purchasing Rose Haven. Dodson moved for summary judgment averring that there he owed no fiduciary duty to Gibbs. The trial court granted Dodson's motion for summary judgment as to all of Gibbs' claims of breach of fiduciary duty on the grounds that there exists no evidence that the parties were joining together to achieve a common business objective and, thus, Dodson owed no duty of disclosure of his intentions to Gibbs. The trial court further denied Gibbs' motion for summary judgment as to Count 1 of Dodson's counterclaim, observing that the mutual release executed by the parties on December 1, 1994, effected a release of any claims, known or unknown, arising after that date, and that Gibbs did not assert that the insurance proceeds were his until February 1995. *Held*:

1. In granting summary judgment to Dodson as to all of Gibbs' claims, the trial court, citing *Kienel v. Lanier*, 190 Ga. App. 201 (378 SE2d 359) and *Harish v. Raj*, 222 Ga. App. 248 (474 SE2d 624), found no evidence that the parties were joining together to achieve a common business objective, and "[t]herefore, there was no fiduciary duty to fully disclose one's intentions." The trial court also found the Put/Call Agreement was merely an effort to further the parties' own separate interests.

In Georgia, as a general rule a corporate director or officer occupies a fiduciary relation to corporate stockholders regarding their shares of stock, and this relationship obtains when the director is dealing with an individual shareholder in the purchase of the shareholder's shares. *Quinn v. Forsyth*, 116 Ga. App. 611, 617 (2) (158 SE2d 686). "Hence, by virtue of his *control of the property*, and his fiduciary relation to the shareholder, a director, when dealing with a stockholder for the purchase of shares, is under the same obligation as partners, agents, and other fiduciaries, to make a full disclosure of all material facts relative to the value of the property under his control, known to him and unknown to the stockholder, where the sources of information are not equally accessible to both parties." (Emphasis supplied.) *Oliver v. Oliver*, 118 Ga. 362, hn. 6 (45 SE 232). However, merely because a director occupies such position, when buying stock he is not under the fiduciary duty of full disclosure either to the corporation or to the other directors. *Harish v. Raj*, supra at 251 (1), citing *King Mfg. Co. v. Clay*, 216 Ga. 581, 586 (1) (118 SE2d 581); accord *Lariscy v. Hill*, 117 Ga. App. 152, 154 (1) (159 SE2d 443); see *Kienel v. Lanier*, supra at 202 (2); but compare *Childs v. Ric Group, Inc.*, 331 FSupp. 1078 (N.D. Ga.), aff'd, 447 F2d 1407 (5th Cir.).

*King*, supra; *Harish*, supra; *Lariscy*, supra; and *Kienel*, supra, are distinguishable from the facts of this case and are not controlling; a fiduciary relation exists in this case, not based upon Dodson's status as a director, but based upon the clear and unequivocal duty imposed by the Put/Call Agreement. Pursuant to the agreement, Dodson was given the authority to manage the business until closing. Gibbs expressly agreed not to interfere with such management provided Dodson kept him "reasonably apprised" of the entities' operations and gave him full access to the entities' books and records. The agreement further provided that neither Dodson nor Gibbs would "take any action to benefit himself, or any action intended to or foreseeably having the effect of adversely affecting the rights of the other [o]wner under this [a]greement." The agreement on its face establishes the parties' intent that there would be a continuing fiduciary relationship between Dodson and Gibbs in return for Gibbs' relinquishment of management control of the entities to Dodson. This agreement violates neither Georgia law nor public policy; parties are free, except as prohibited by statute or public policy to contract on any terms and about any subject matter they so desire. *Duffett v. E & W Properties*, 208 Ga. App. 484, 487 (2) (430 SE2d 858). The agreement, in effect, prohibited either party from seizing a corporate opportunity for their personal use or benefit. See *Quinn v. Cardiovascular Physicians, P.C.*, 254 Ga. 216, 218 (3) (326 SE2d 460). Further, the doctrine of clean hands has no application in a suit for damages for breach of a fiduciary relationship. *Zappa v. Automotive &c. Machinery*, 205 Ga. App. 584 (2) (423 SE2d 286). It is for jury resolution whether this fiduciary relation was breached by the acts or omissions of Dodson.

The trial court erred in granting summary judgment to Dodson as to Gibbs' claims.

2. The trial court denied summary judgment to Gibbs on Dodson's counterclaim for a constructive trust.

Appellant Gibbs contends that the mutual release, executed by Gibbs, Dodson, Rose Haven Chapel, Inc., Rose Haven Cemetery, Inc., and Dodson & Gibbs (partnership) on December 1, 1994, released him from any liability to Dodson in regard to Dodson's counterclaim. The mutual release pertinently provides: "THIS MUTUAL RELEASE . . . is intended to effect the extinguishment of all claims any party hereto may have against any other party hereto, whether known or unknown, and each party hereto hereby releases, waives, and forever discharges the other parties hereto . . . from any and all claims, demands, damages, costs, expenses, actions, causes of action, known or unknown, related to the parties' business relationships *through and including the date hereof.* . . . In addition, this release shall not cover claims based on breach of fiduciary duty, embezzle-

ment or the taking of unlawful actions by any party hereto." (Emphasis supplied.) The release was executed on December 1, 1994.

In denying grant of summary judgment to Gibbs, the trial court found inter alia that the claim was not asserted by Gibbs until February 1995 and was not barred by the release. A release is subject to the same rules of construction as govern ordinary contracts in writing; a release is to be construed according to the intent of the parties. *U. S. Anchor Mfg. v. Rules Indus.*, 264 Ga. 295, 298 (2) (443 SE2d 833). A general release ordinarily does not discharge liability for injury caused by unknown tortious conduct which has already been committed. However, it is possible that a party may intend to discharge liability for injury caused by unknown tortious conduct. An intention to release a party from liability for unknown conduct must be clearly expressed in the release. Id.

The mutual release in this case expressly provided that the parties would be released inter alia from all claims, known or unknown, arising on or before the date of the release. It is of no legal significance that Dodson was *unaware* that Gibbs subsequently would contend, as the original legal owner of the policy, that it had been obtained for his personal use and benefit to the exclusion of any claim of interest by Dodson or the funeral business. If the claim Dodson asserted in Count 1 of his counterclaim for a constructive trust as to the life insurance policy on his life existed on or before December 1, 1994, it was barred by the mutual release. "A constructive trust arises with respect to property the title to which was acquired by fraud, *or* where although acquired originally without fraud, it is against equity that the title should be retained by the one who holds it." (Emphasis supplied.) *Kelly v. Johnston*, 258 Ga. 660, 661 (1) (373 SE2d 7); accord *Williamson v. Echols*, 205 Ga. App. 453, 455 (2) (422 SE2d 329).

Dodson's counterclaim does not aver that Gibbs initially was in wrongful possession of the insurance policy; rather, the counterclaim is grounded on the contention that, after the SBA loan was satisfied, Dodson directed the insurance agent to contact Gibbs and have the policy transferred to Dodson and that Gibbs subsequently refused to cooperate and fraudulently asserted that the policy was created for his personal use and benefit. The gravamen of Dodson's constructive trust counterclaim and cause of action is that Gibbs, although initially in lawful possession of the policy, subsequently wrongfully retained it and converted it to his own benefit and use thereby violating principles of equity warranting the imposition of a constructive trust. "In this state 'conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or

an unauthorized appropriation.' " *Adler v. Hertling*, 215 Ga. App. 769, 772 (1) (451 SE2d 91). Gibbs' refusal to cooperate and assertion of rights hostile to those of Dodson occurred after the date when the mutual release was executed. Dodson's claim and cause of action for a constructive trust would not become viable until Gibbs asserted a paramount right to the policy thereby engaging in an act of dominion hostile to Dodson's ownership rights and contrary to equity, which was after the date of execution of the mutual release. Thus, Dodson's claim and cause of action were not barred by the mutual release; the trial court did not err in so holding and in denying Gibbs' motion for summary judgment as genuine issues of material fact remained for jury resolution. A denial of summary judgment must be affirmed if it is right for any reason. See *Malaga Mgmt. Co. v. John Deere Co.*, 208 Ga. App. 764, 767 (5) (431 SE2d 746). Gibbs' remaining assertions in support of his second enumeration of error are without merit.

*Judgment affirmed in part and reversed in part. Ruffin and Eldridge, JJ., concur.*

DECIDED OCTOBER 29, 1997.

*Kitchens, Kelley & Gaynes, Mark A. Kelley*, for appellant.
*Moore, Ingram, Johnson & Steele, Robert D. Ingram, Robert E. Jones, Michael W. Kitchens*, for appellee.