A04A1896, A04A1959. INFRASOURCE, INC. v. HAHN YALENA CORPORATION; and vice versa.
(613 SE2d 144)

SMITH, Presiding Judge.

An attempted acquisition of Hahn Yalena Corporation ("Hahn") by Infrasource, Inc., f/k/a Exelon Infrastructure Services, Inc., ("Infrasource") gave rise to Hahn's suit alleging fraud in the negotiations and ultimately these appeals. In Case No. A04A1896, Infrasource appeals from a judgment on a jury verdict against it and in favor of Hahn.[1] In its appeal, Infrasource complains that the trial court erred in refusing to direct a verdict on two fraud claims, resulting in a substantial award for compensatory and punitive damages. Because the fraud alleged by Hahn involved arm's-length negotiations, unfinalized agreements, and future promises that do not support a cause of action, we agree that the evidence failed to show fraudulent concealment or fraudulent misrepresentation, and we therefore reverse. In the cross-appeal, Case No. A04A1959, Hahn appeals the grant of summary judgment with respect to its trade secrets claim. We affirm in that case, because we agree with the trial court that Hahn failed to show reasonable efforts to maintain secrecy.

At the time of the events giving rise to this litigation, Infrasource was seeking to assemble a group of companies to provide consolidated utility contracting. In early 1999, Infrasource entered acquisition negotiations with Hahn. Hahn's lead representative in the negotiations was a businessman with more than 30 years of experience in various commercial enterprises, including 18 years in the contracting business. Hahn was also represented by counsel. The negotiations continued through early 1999, with various proposals discussed, but the parties were never able to reach an agreement. Infrasource's concerns included Hahn's status as a recent startup company, the lack of a profit record, unaudited financial statements, and Hahn's delays in producing requested financial information. Hahn's representative acknowledged that Infrasource did not waive "due diligence" investigation and that "there were some items left for them to do."

---

[1] The other defendant below, Exelon Infrastructure Services of Pennsylvania, Inc. ("Exelon PA") did not appeal.

In July 1999, as Hahn's representative acknowledged, Infrasource informed him that another acquisition candidate had "come back to the table," although Infrasource declined to identify the company. Hahn apparently did not investigate this matter further, even when its representative saw equipment from the other company on a job site in Atlanta, nor did it inform Infrasource that it would "walk away from the deal" if another company was also acquired.

Meanwhile, in the spring or early summer of 1999, Exelon PA, a sister company of Infrasource,[2] approached Hahn about performing work in Georgia for Atlanta Gas Light Company. While Hahn actually began this work, the trial court ruled that no contract existed between Exelon PA and Hahn, and this judgment was not appealed. Hahn contends, however, that this work was intertwined with its acquisition negotiations with Infrasource and that the provision of this work forms part of its evidence of fraud. Hahn began the work for Atlanta Gas Light on July 12, 1999, and on July 16 a bid was prepared with Exelon PA for year 2000 work for Atlanta Gas Light.

The first proposed written agreement between Infrasource and Hahn, drafted by Infrasource, was prepared on July 23, 1999. Hahn rejected that proposed agreement on July 26. Despite continuing negotiations with Exelon PA to complete the Atlanta Gas Light work as a joint venture, Hahn ultimately walked off the Exelon PA job in early August and never returned. In February 2000, Hahn brought this action against Infrasource and Exelon PA, asserting claims for breach of fiduciary duties, breach of contract, fraudulent concealment, quantum meruit, unjust enrichment, breach of confidential relationship, misappropriation of trade secrets, and bad faith attorney fees.

Before trial, Infrasource moved for partial summary judgment. The trial court granted summary judgment on Hahn's claims for breach of contract, breach of fiduciary duty, and misappropriation of trade secrets, but denied summary judgment on Hahn's fraud claims and claims for breach of confidential relationship with respect to the 2000 Atlanta Gas Light bid. At trial, Infrasource moved for a directed verdict on several grounds. The trial court granted Infrasource's motion with respect to Hahn's breach of confidential relationship claims, but denied a directed verdict on the fraud issues and denied Infrasource's motion to dismiss for lack of subject matter jurisdiction.

---

[2] Infrasource and Exelon PA were both owned by PECO Energy.

*Case No. A04A1896*

1. Infrasource first complains that the evidence did not support Hahn's claim of fraudulent concealment in failing to disclose negotiations with a competing company. We agree.

Georgia law is abundantly clear that "[a]n obligation to disclose must exist before a party may be held liable for fraud based upon the concealment of material facts. [Cit.]" *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 631 (466 SE2d 872) (1995). In the absence of a confidential relationship, no duty to disclose exists when parties are engaged in arm's-length business negotiations; in fact, an arm's-length relationship by its nature excludes a confidential relationship. Id. at 637 (6) (a).

Hahn contends that a confidential relationship existed between it and Infrasource, obligating Infrasource to disclose that it had renewed negotiations with another company. But the circumstances under which a confidential relationship can arise from an arm's-length negotiation between sophisticated businessmen are limited.

"Any relationship shall be deemed confidential . . . where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." OCGA § 23-2-58. "The mere fact that one reposes trust and confidence in another does not create a confidential relationship. A confidential and fiduciary relationship must be shown by proof, and the burden is upon the party asserting the existence of such relationship to affirmatively show the same." (Citations and punctuation omitted.) *Allen v. Hub Cap Heaven*, 225 Ga. App. 533, 537 (4) (484 SE2d 259) (1997). Parties negotiating the sale of a business "are not, by virtue of their status as such, placed in a confidential relationship to each other but are presumed to be dealing at arm's length. [Cit.]" *Goldberg*, supra, 219 Ga. App. at 637.

Citing a federal case relying on Georgia law, Hahn argues that "a common business objective" exists here and constitutes evidence of a confidential relationship. *Williams v. Dresser Indus.*, 120 F3d 1163, 1168, n. 18 (11th Cir. 1997). But *Williams* relies upon our decision in *Kienel v. Lanier*, 190 Ga. App. 201 (378 SE2d 359) (1989), which makes plain that a "common business objective" is relevant only to the existence of a confidential relationship in "a transaction in which the parties joined together, as partners, promoters, joint venturers, or otherwise, to achieve a common business objective." Id. at 204. Here, there was no partnership, joint venture, merger, or purchase, but only a *failed attempt* to negotiate the creation of such a relationship. The parties' similar, but separate, business objectives therefore did not

merge into a common business objective within the meaning of *Kienel*. The *Williams* court also relied upon *Allen*, supra, 225 Ga. App. at 537 (4), which notes:

> The transaction in this case, like the one in *Kienel*, was not one in which the parties joined together as partners, promoters, joint venturers, or otherwise, to achieve a common business objective. Rather, the parties were engaged in a transaction with each other in an effort to further their own separate business objectives. Under such circumstances, one party was not under any duty to represent or advance the other's interests.

(Citations and punctuation omitted.) Id. Here, Hahn's representative testified that Hahn wanted to maintain its independence in the relationship and "control [its] own destiny," and for this reason insisted on status as a "platform" company[3] in its negotiations. This arm's-length position, which Hahn never abandoned and which it alleges contributed to the collapse of negotiations, is wholly inconsistent with the existence of a confidential relationship. See *Goldberg*, supra, 219 Ga. App. at 637.

The trial court considered that, with respect to the 2000 Atlanta Gas Light bid only, there was a "common business objective," and it denied summary judgment with respect to Hahn's claim for breach of a confidential relationship on that claim. But the 2000 Atlanta Gas Light bid was prepared by Hahn with Exelon PA, not Infrasource; Exelon PA did not appeal the judgment against it and is not a party to this appeal. In its brief, Hahn makes no effort to "pierce the corporate veil" or demonstrate that Infrasource and Exelon PA were so intertwined as to justify disregard of their corporate identities. The fact that Infrasource's president was also an officer in Exelon PA is not dispositive. "That corporations share . . . officers is not sufficient basis for 'piercing the corporate veil' or concluding that one or more of the corporate entities is a 'shell.' [Cit.]" *Ciprotti v. United Inns*, 209 Ga. App. 457, 458 (3) (433 SE2d 585) (1993). And we may consider the existence of a confidential relationship only *"with respect to the transaction at issue,"* not transactions between the parties and other entities. *Kienel*, supra, 190 Ga. App. at 204.

Moreover, as Hahn's representative acknowledged, Infrasource's representative informed him during negotiations that a competing

---

[3] According to Hahn's representative, Infrasource represented to him that "founders" or "platform" companies would be represented "on a board or panel" and have input into future acquisitions and the direction of the company.

company had "come back to the table." Although the identity of the competing company was not disclosed, this placed Hahn on notice of the existence of a potential competitor. In a claim for fraud and fraudulent concealment, the plaintiff must show all five elements of fraud, including justifiable reliance: "proof that due care was exercised to discover the fraud." (Citation and punctuation omitted.) *Artzner v. A & A Exterminators*, 242 Ga. App. 766, 769-770 (1) (531 SE2d 200) (2000). Assuming for the sake of argument that Infrasource had a duty to disclose its negotiations with other prospective acquisition targets, Hahn's failure to investigate further when placed on notice negates the necessary element of justifiable reliance from Hahn's claim for fraudulent concealment. In the case of a sophisticated businessman, "greater diligence is required" to show justifiable reliance. *Goldberg*, supra, 219 Ga. App. at 631. The trial court erred in failing to direct a verdict for Infrasource on the fraudulent concealment claim.

2. Infrasource also contends that the trial court should have granted a directed verdict on the issue of fraudulent misrepresentation of its intentions regarding Hahn's eventual status and the payment structure of the acquisition. We agree.

Mere opinions, predictions, and conjectures relating to future events cannot form the basis of a fraud claim. *Riddle v. Driebe*, 153 Ga. App. 276, 281 (265 SE2d 92) (1980). "It is axiomatic that a false representation made by a defendant, to be actionable, must relate to an existing fact or a past event. Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events. Representations concerning expectations and hopes are not actionable." (Citations and punctuation omitted.) *Fuller v. Perry*, 223 Ga. App. 129, 131 (476 SE2d 793) (1996). Like the plaintiff in *Fuller*, Hahn acknowledged that the agreement with Infrasource had not been finalized at the time of the alleged misrepresentations. Id. Indeed, in contrast to the situation in *Fuller*, no agreement was later reached and no contract was ever entered into by Infrasource and Hahn. It follows that Infrasource's "alleged statements regarding the price and structure of the ultimate agreement," id., including Hahn's exact position in Infrasource's plans, the participation of a competing company, and the price and manner of payment, constituted mere "opinions, predictions, and conjectures," id. at 132, and hence are not actionable.

Hahn, in response, asserts the black letter law that promises with no present intent to perform are actionable. See *Fuller*, supra, 223 Ga. App. at 131-132 (1). It cites three alleged misrepresentations by Infrasource: (1) that Infrasource misrepresented its intent for Hahn to be a subcontractor rather than a joint venturer; (2) that Infrasource represented that Hahn would be a "platform" company

while intending for the competing company to have that status instead; and (3) that Infrasource misrepresented the structure of the payment it was willing to offer to acquire Hahn.

But the parties were still in negotiations and never reached agreement, no actionable promises were made, and Infrasource did not know that its negotiations to acquire a different company would succeed or that the incomplete due diligence investigations on Hahn would prove satisfactory. At the time the statements were made during negotiations that did not result in an agreement, Infrasource could not have known future events. Hahn therefore has failed to show a present intention not to perform. Significantly, Hahn's representative acknowledged that he believed Infrasource's initial intentions to be honest, and that its intentions only changed once the competing company "came back to the table." This is exactly the sort of change in circumstances that can be expected to occur during extended negotiations that never come to completion. Particularly when each party is sophisticated in business matters and advised by its own attorney, "[w]e decline to adopt a holding that would essentially convert every arm's length business transaction into a confidential relationship." *Albee v. Krasnoff*, 255 Ga. App. 738, 741 (2) (566 SE2d 455) (2002).

3. Infrasource also contends that Hahn failed to comply with the provisions of the Georgia Nonresident Contractors Act, OCGA §§ 48-13-30 through 48-13-38, and that its action therefore should be dismissed without prejudice. We disagree.

The Nonresident Contractors Act provides that any contractor "engaged in the business of constructing, altering, repairing, dismantling, or demolishing" enumerated improvements to realty, including "water and gas mains," who fails to comply with the Act before performing a contract shall not "be entitled to maintain an action to recover payment for performance on the contract in the courts of this state." OCGA §§ 48-13-30; 48-13-37. As noted previously in this opinion, the work Hahn performed in Georgia was with Exelon PA, which did not appeal the judgment against it. The claims at issue in this appeal do not depend upon a contract to perform work in Georgia or upon "the recovery of payment for performance under the contract," (citation omitted), *Mayor & Aldermen of Savannah v. Norman J. Bass Constr. Co.*, 264 Ga. 16, 17 (2) (441 SE2d 63) (1994), but upon alleged fraud in the negotiation of a proposed merger agreement. This enumeration of error therefore has no merit.

## Case No. A04A1959

4. In its cross-appeal, Hahn contends that the trial court erred in granting summary judgment on its misappropriation of trade secrets

claim and in granting Infrasource's motion for directed verdict on the issue of lost profits with respect to that claim. Hahn contends that the bid numbers it provided to Infrasource for use on the Atlanta Gas Light project were trade secrets and that Infrasource misappropriated its information "through improper, fraudulent acts." As noted above, the trial court granted summary judgment, finding that the bid information was not a trade secret and that Hahn did not undertake reasonable efforts to maintain secrecy. We need not decide whether bid calculations in and of themselves constitute a trade secret, because we agree with the trial court that Hahn did not undertake reasonable efforts to maintain secrecy. We therefore affirm.

"A trade secret must . . . be the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Citation and punctuation omitted.) *Stargate Software Intl. v. Rumph*, 224 Ga. App. 873, 876 (2) (482 SE2d 498) (1997). As Infrasource contends, Hahn's trade secrets claim is directly controlled by our ruling in *Stargate*.

Hahn undertook to perform the Atlanta Gas Light work not with Infrasource but with Exelon PA, a separate corporation. Hahn knew at the time that the information would be submitted to Atlanta Gas Light as part of the bid. The bid information was disclosed in anticipation of a joint venture agreement with Exelon PA that never materialized and the proposed acquisition with Infrasource that also never came to fruition. Hahn's president developed the bid calculations, including actual costs for overhead, insurance, taxes, and profit. He testified that "those numbers were available to everybody . . . those numbers were no secret," including the actual cost information that he asserted was proprietary information.

Contrary to Hahn's contention, the communication of its bid prices to Infrasource, Exelon PA, and Atlanta Gas Light cannot be distinguished from the communication involved in *Stargate*. Hahn points to no efforts on its part to maintain secrecy with respect to its bid calculations, whether in the form of a nondisclosure or confidentiality agreement or some other method.

In fact, Hahn relies primarily upon its allegations of fraud and breach of a confidential relationship to distinguish this failed joint venture from the failed agreement in *Stargate*. But, as noted above, Hahn's fraud claims should not have been submitted to the jury, and no confidential relationship existed as a matter of law. Here, Hahn's president himself disclosed the bid calculations and knew that they would be transmitted to Atlanta Gas Light as part of the bid. No evidence was introduced regarding efforts to keep the information secret. Under the circumstances, we agree with the trial court that

the evidence shows any effort made to maintain secrecy was unreasonable as a matter of law. The trial court did not err in granting summary judgment on the trade secret claim.

Since summary judgment was properly granted on Hahn's trade secret claim, we need not reach the issue of whether lost profits were provable with respect to that claim.

*Judgment reversed in Case No. A04A1896. Judgment affirmed in Case No. A04A1959. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 22, 2005 —
RECONSIDERATIONS DENIED APRIL 12, 2005 —

*Alston & Bird, Theodore J. Sawicki, Scott P. Hilsen, Regina S. Molden, Leslie M. Mathis*, for appellant.

*Kilpatrick Stockton, R. Randy Edwards, Drew D. Baiter*, for appellee.