In the Matter of WESTEK GEORGIA, LLC, Debtor.

Westek Georgia, LLC, Plaintiff,

v.

Alan R. Oglesbee, Robert E. Johnson, and Gregory W. Phillips, Defendants.

Bankruptcy No. 03–55298 RFH.

Adversary No. 04–5058.

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Oct. 6, 2005.

Steven M. Kushner, Thomas W. Wingfield, Karen Fagin White, Bruce Z. Walker, Kelly S. Scarbrough, Atlanta, GA, for Westek Georgia, LLC.

Hubert C. Lovein, Jr., Cater C. Thompson, Macon, GA, for Alan R. Oglesbee,

Robert E. Johnson, and Gregory W. Phillips.

## *MEMORANDUM OPINION*

ROBERT F. HERSHNER, JR., Chief Judge.

Alan R. Oglesbee, Robert E. Johnson, and Gregory W. Phillips, Defendants, filed on July 5, 2005, a motion for partial summary judgment. Westek Georgia, LLC, Plaintiff, filed on July 6, 2005, a motion for partial summary judgment.[1] The Court, having considered the record and the arguments of counsel, now publishes this memorandum opinion on the cross-motions for partial summary judgement.

"[The] filing of cross-motions [for summary judgment] does not establish that there is no material fact in issue and that a trial is therefore unnecessary. The Court must still make an independent evaluation as to the merits of each party's motion." *Donovan v. District Lodge No. 100, International Assoc. of Machinists and Aerospace Workers, AFL–CIO*, 666 F.2d 883, 886 (5th Cir. Unit B, 1982).

"The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard. Both motions must be denied if the court finds that there is a genuine issue of material fact." 10A C. Wright, A. Miller, & M. Kane, *Federal Civil Practice and Procedure 3d* § 2720, p. 335–36 (1998).

The following facts are not in dispute.[2] Westek, Inc. was a tire cordage company owned by a West German bank. The bank decided to liquidate Westek. Defendants were employees of Westek. Defendants formed a Georgia corporation known as Martha Mills, Inc. to acquire Westek. In August 2001, Martha Mills purchased all of the stock in Westek from the bank for $1,500,000. Westek's obligations totaled some $9,000,000 at the time of the purchase. Defendants financed the purchase with a $1,500,000 short-term loan from Flag Bank. Defendants immediately satisfied the loan by selling Westek's water facility to the City of Thomaston for $1,500,000.

Martha Mills was the parent company and Westek was the subsidiary. Defendants were officers, directors, and shareholders of Martha Mills. Defendants were officers, directors, and employees of Westek.

Westek had severe financial problems. Despite the problems, Defendants did not invest any funds in Martha Mills or Westek. Defendants did not reduce their annual salaries of $90,000.

In October 2002, Plaintiff agreed to purchase substantially all of the assets of Westek for $1,380,000. The assets included real property, machinery, and equipment. Plaintiff also agreed to assume most of Westek's financial obligations. Defendants negotiated the sale on behalf of Westek.

Adam Singer, CPA, has served as a consultant to Plaintiff since the summer of 2002. Mr. Singer assisted Plaintiff in its due diligence analysis for the purchase of Westek's assets and assumption of its obli-

---

1. In their motions for partial summary judgment, Plaintiff and Defendants ask the Court to rule upon the standard and burden of proof that will be required at the trial of this adversary proceeding.

2. *See* Debtor's Statement Of Material Facts As To Which There Is No Genuine Issue To Be Tried, (filed July 6, 2005), Docket No. 36; Affidavit Of Alan R. Oglesbee (filed July 5, 2005), Docket No. 33; Affidavit Of Adam Singer (filed July 28, 2005), Docket No. 51 Exhibit A.

gations. Mr. Singer, in his affidavit, testifies, "From our due diligence, we knew that Westek was in terrible financial condition and could not meet its obligations as they became due."[3]

Plaintiff and Westek entered into an Asset Purchase Agreement dated October 30, 2002. Pursuant to the agreement, Plaintiff was to pay $300,000 at closing to Westek. Plaintiff and Defendants were to enter into a non-competition agreement which, over time, would pay $1,080,000 to Defendants. Plaintiff was to employ Mr. Oglesbee and Mr. Johnson.

The sale closed on November 15, 2002. Plaintiff paid $300,000 to Westek. Westek distributed the funds to Martha Mills which in turn distributed the funds to Defendants. Plaintiff and Defendants executed a Noncompetition Agreement. The Noncompetition Agreement provides, in part, that Defendants would not disclose certain confidential information or work in a competitive business for a period of five years. The Noncompetition Agreement was the primary vehicle for payment of cash to Defendants as consideration for the sale. Plaintiff was to make quarterly payments to Defendants through October 2008. The payments would total $1,080,000. As security for the obligations, Plaintiff executed a deed to secure debt on its real property in favor of Defendants. Plaintiff also executed a security agreement on its machinery and equipment in favor of Defendants.

After the closing, Plaintiff employed Mr. Phillips as its chief financial officer and as general manager for operations at the tire cordage facility. Mr. Johnson was employed as human resources manager. Plaintiff also employed Mr. Oglesbee. Defendants were not officers, directors, or shareholders of Plaintiff.

Plaintiff's business was not successful. Plaintiff fired Defendants. Plaintiff contends that Defendants fraudulently misrepresented the financial obligations of Westek. Plaintiff contends that Defendants disclosed that Westek had obligations of some $10,000,000. Plaintiff contends that Defendants failed to disclose that Westek had another $1,000,000 in obligations.[4]

Plaintiff ceased operations and leased its real property and equipment to a third party, Royal Cord, Inc.

Plaintiff filed on October 24, 2003, a complaint against Defendants and Westek in the Superior Court of Upson County, Georgia. Plaintiff asserts claims for fraud, breach of contract, and indemnification. Defendants filed a response, a counterclaim, and a third party complaint. The state court action will determine the mutual claims and obligations of Plaintiff and Defendants. The state court action is currently pending.

Defendants and other creditors filed on November 12, 2003, an involuntary petition under Chapter 7 of the Bankruptcy Code against Plaintiff. Plaintiff, on January 14, 2004, exercised its right to convert the Chapter 7 case to a Chapter 11 case. Plaintiff is the debtor-in-possession in the Chapter 11 case. Defendants filed proofs of claims asserting secured claims that total almost $1.13 million.

Plaintiff filed this adversary proceeding on April 15, 2004. Plaintiff contends that Defendants' claims should be subordinated to all unsecured claims for purposes of

**3.** Affidavit Of Adam Singer, para 7 (filed July 28, 2005), Docket No. 51 Exhibit A.

**4.** *See* Debtor's Brief In Support Of Motion For Partial Summary Judgment On Subordination, pp. 4–5, (filed July 6, 2005), Docket No. 35.

distribution. Plaintiff also contends that Defendants' deed to secure debt and security agreement should "in effect be voided."

Section 510(c) of the Bankruptcy Code provides:

## § 510.  Subordination

. . .

(**c**) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(**1**) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(**2**) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C.A. § 510(c) (West 2004).

In *Estes v. N & D Properties, Inc.*, (*In re N & D Properties, Inc.*)[5], the Eleventh Circuit Court of Appeals stated in part:

A.  *Equitable Subordination*

Section 510(c) of the Bankruptcy Code provides that claims against the debtor's estate may be accorded a priority inferior to those of secured or unsecured creditors where "the principles of equitable subordination" so dictate. This section's legislative history indicates that such principles are to be found in case law on the subject. Binding precedent in this circuit holds that equitable subordination is proper where three elements are established:

(1) that the claimant has engaged in inequitable conduct;

(2) that the conduct has injured creditors or given unfair advantage to the claimant; and

(3) that subordination of the claim is not inconsistent with the Bankruptcy Code.

The burden and sufficiency of proof required are not uniform in all cases. Where the claimant is an insider or a fiduciary, the trustee bears the burden of presenting material evidence of unfair conduct. Once the trustee meets his burden, the claimant then must prove the fairness of his transactions with the debtor or his claim will be subordinated. If the claimant is not an insider or fiduciary, however, the trustee must prove more egregious conduct such as fraud, spoliation or overreaching, and prove it with particularity.

In light of these distinctions, the trustee's claim of error on equitable subordination cannot be properly evaluated until the appropriate standard and burden of proof are determined. The correct standard, of course, depends upon if and when appellee became an insider or fiduciary of the debtor. The Bankruptcy Code defines an insider as an officer, director, or "person in control of the debtor" corporation. *See* § 101(28)(B). A fiduciary, under general corporate theory, includes an officer, director, agent, majority shareholder or a minority shareholder exercising actual control over the corporation. A shareholder has control when she determines corporate policy, whether by personally assuming management responsibility or by selecting management personnel.

799 F.2d at 731–32. (citations omitted).

---

5.    799 F.2d 726 (11th Cir.1986).

■ Turning to the case at bar, the cross-motions for partial summary judgment ask the Court to determine whether Defendants were insiders or fiduciaries of Westek Georgia, LLC, the Chapter 11 debtor-in-possession and the Plaintiff in this adversary proceeding. This determination will decide the appropriate standard and burden of proof in this adversary proceeding. Plaintiff contends that "The critical time period for determining [Defendants'] insider and fiduciary status is October 2002, through November 15, 2002—the time period during which [Defendants] committed the inequitable conduct in question by transferring Westek Inc.'s liabilities to the Debtor [Plaintiff] and assuming a 'me-first' secured creditor position over all of those liabilities." Debtor's Response And Opposition To OJP's Motion For Partial Summary Judgment, p. 2 (filed July 28, 2005), Docket No. 49.

Thus, the "critical time period" occurred prior to the closing of the sale and prior to Defendants' employment by Plaintiff.

■ Defendants concede that they were officers, directors, and insiders of Westek, the entity that sold its assets to Plaintiff.[6] Westek was having serious financial problems during the time Defendants were negotiating the sale of Westek's assets. Under Georgia law, the directors and managing officers of an insolvent corporation stand in a trust relationship with creditors and must manage the remaining corporate assets in trust for creditors.[7]

Plaintiff purchased Westek's assets and assumed its financial obligations. Plaintiff contends that Defendants' fiduciary obligations to Westek's creditors shifted to Plaintiff's creditors. Plaintiff contends that Defendants became insiders or fiduciaries of Plaintiff. Plaintiff concedes that there is no case law to support its contentions.[8]

■ Article 13.15 of the Asset Purchase Agreement states that the agreement was negotiated at arms length by the parties and their respective counsel. Article 13.14 states that the parties were not partners or joint venturers. Under Georgia law parties negotiating the sale of a business should have trust and confidence in each other's integrity, but there is no confidential relationship or fiduciary duty between the parties. The parties to the sale seek to further their own separate business objectives and have no duty to represent or advance the other party's interests. *Infrasource, Inc. v. Hahn Yalena Corp.*, 272 Ga.App. 703, 613 S.E.2d 144, 146–47 (2005); *Newitt v. First Union National Bank*, 270 Ga.App. 538, 607 S.E.2d 188, 196 (2004); *Mail & Media, Inc. v. Rotenberry*, 213 Ga.App. 826, 446 S.E.2d 517, 520 (1994), *cert denied.*

Plaintiff and Westek are separate legal entities. Plaintiff has not cited any case law holding that a fiduciary obligation shifted from the creditors of the selling corporation to the creditors of the purchasing corporation. The Court is not persuaded that Plaintiff has demonstrated that Defendants stood in a trust relationship with Plaintiff's creditors. The Court

---

6. Defendants' Brief In Support Of Motion For Partial Summary Judgment, pp. 1,5 (filed July 5, 2005), Docket No. 33.

7. *Smith Drug Co. v. Pharr–Luke (In re Pharr–Luke)* 259 B.R. 426, 430 (Bankr.S.D.Ga.2000); *Kaplan's Nadler, Georgia Corporations, Limit-*

*ed Partnerships and Limited Liability Companies*, § 10–19 (2000).

8. Debtor's Brief In Support Of Motion For Partial Summary Judgment On Subordination, p. 12 (filed July 6, 2005), Docket No. 35.

is not persuaded that Defendants were insiders or fiduciaries of Plaintiff.

Plaintiff also contends that Defendants' claims[9] should be treated as stock redemption claims subject to no fault subordination. Plaintiff contends that its purchase of Westek's assets was essentially a sale of Westek's stock to Plaintiff. Plaintiff contends that Defendants essentially exchanged their ownership interest in Westek for secured debt through the Noncompetition Agreement.

 A stock redemption is a transaction in which a corporation acquires its own stock from shareholders. The transaction is not a sale of stock but simply a method of distributing a portion of the assets of the corporation to shareholders. Former shareholders who redeemed their stock in exchange for debt are considered to be creditors. The former shareholders, however, are not entitled to payment unless other creditors are paid in full. If the corporation is or becomes insolvent, the former shareholders' claims may be equitably subordinated to the claims of other creditors. The former shareholders, in substance, become equity holders rather than creditors. *In re Envirodyne Industries, Inc.*, 79 F.3d 579, 582 (7th Cir.) *cert. denied* 519 U.S. 821, 117 S.Ct. 77, 136 L.Ed.2d 36 (1996); *See Robinson v. Wangemann*, 75 F.2d 756 (5th Cir.1935). *But see Merrimac Paper Co. v. Harrison, (In re Merrimac Paper Co.)*, 420 F.3d 53 (1st Cir.2005) (rejecting automatic subordination of stock redemption claims and requiring that subordination of a particular claim be fairly based on the totality of the circumstances).

 Plaintiff cites a number of cases in which stock redemption claims were subordinated to the claims of other creditors. In those cases the claims arose from redemptions of stock in the debtor corporation.

In the case at bar, Defendants never owned any stock in Westek Georgia, LLC, the Chapter 11 debtor-in-possession and the Plaintiff in this adversary proceeding. Defendants were shareholders of Martha Mills, the parent company of Westek. Plaintiff and Martha Mills are separate legal entities. Plaintiff has not cited any case law which supports its contentions.

The Court is not persuaded that Defendants were insiders or fiduciaries of Plaintiff during the "critical time period". Under Eleventh Circuit law, Plaintiff must therefore prove more egregious conduct such as fraud, spoliation or overreaching, and prove it with particularity, in order for Plaintiff to carry its burden of proof.

The Court has considered each of the cross-motions for partial summary judgment on an individual and separate basis in accordance with the requirements of Federal Rule of Civil Procedure 56. The Court is persuaded that Plaintiff's motion for partial summary judgment should be denied and that Defendants' motion should be granted.

An order in accordance with this memorandum opinion will be entered this date.

9. Defendant's claims arose from the Noncompetition Agreement.