**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 24, 2019**

# In the Court of Appeals of Georgia

A19A0930. 6428 CHURCH STREET, LLC et al. v. SM CORRIGAN, LLC et al.

A19A0931. JAMES J. CORRIGAN, AS TRUSTEE OF THE JAMES J. CORRIGAN 1989 TRUST v. 6428 CHURCH STREET, LLC et al.

A19A0963. SM CORRIGAN, LLC et al. v. 6428 CHURCH STREET, LLC et al.

MERCIER, Judge.

These related appeals arise from a business dispute involving James Corrigan ("James"), Shannon Corrigan ("Shannon"), Kenneth Downing ("Downing"), and their corporations. In 2011, James, as the Trustee of the James J. Corrigan 1989 Trust, sued Downing, 6428 Church Street, LLC ("6428 Church"), and C&S 1, LLC ("C&S") (collectively, "the defendants") for numerous claims, including breach of contract and fraud. The next year, Shannon and her company, SM Corrigan, LLC ("SMC"),

brought a separate suit against Downing and 6428 Church, alleging claims for, among other things, breach of contract and fraud. In response to the second suit, Downing and 6428 Church filed counterclaims for breach of contract and litigation expenses.

The two lawsuits were consolidated in 2013, and the various parties moved for summary judgment. In a single order, the trial court granted summary judgment to the defendants on the fraud claims brought by James, Shannon, and SMC.[1] It also granted Shannon and SMC summary judgment on Downing and 6428 Church's counterclaims.

In Case No. A19A0930, the defendants appeal the trial court's order granting Shannon and SMC summary judgment on their counterclaims.[2] In Case No. A19A0931, James (as Trustee of the James J. Corrigan 1989 Trust) challenges the trial court's grant of summary judgment to the defendants on his fraud claim. Finally, in Case No. A19A0963, Shannon and SMC appeal the trial court's fraud determination as to them. For reasons that follow, we affirm in part and reverse in

[1] Other claims alleged by James, Shannon, and SMC – including for breach of contract – remain pending below.

[2] Although it appears that only Downing and 6428 Church are impacted by the trial court's ruling in Case No. A19A0930, all three defendants are included in the notice of appeal, so we will refer to them as "the defendants."

2

part the trial court's ruling in Case No. A19A0930, and we affirm the rulings in Case No. A19A0931 and Case No. A19A0963.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the non-moving party. See *Pacrim Assoc. v. Turner Home Entertainment*, 235 Ga. App. 761, 762 (510 SE2d 52) (1998).

So viewed, the evidence shows that James and Downing began working together in the 1980s, brokering and investing in real estate. In 2006, the two entered into a joint venture to purchase, refurbish, and refinance and/or sell Riverdale Villas, an apartment complex located in Riverdale, Georgia.[3] The property was acquired using money loaned by James, and ownership was placed within 6428 Church, a limited liability corporation of which Downing was the manager and sole member.

---

[3] James alleges that his actions in the various business deals at issue here were undertaken on behalf of the James J. Corrigan 1989 Trust.

3

James subsequently informed Downing that his sister, Shannon, wanted to participate in the Riverdale Villas venture, and they negotiated her participation, with James acting as her agent throughout the transaction. On June 21, 2006, Shannon purchased a 70 percent ownership interest in the property for approximately $1.2 million. As part of the acquisition, she made an immediate capital investment of $590,000 that was to be used to refurbish the property and to repay James a portion of the money he had loaned to the venture. She also signed notes and guarantees for the remainder of the purchase price. Shannon and 6428 Church executed a co-tenancy agreement that governed their ownership interests and established 6428 Church as the manager of the property. Shannon then transferred her 70 percent interest to SMC, her limited liability corporation.

According to Downing, "it[] [was] always . . . my understanding that this was a buy and refi, or buy-and-sell situation with the property, that it would be a one to two-year type of investment." Shannon also expected a maximum two-year investment that would provide her a guaranteed rate of return and tax benefits. After renovating Riverdale Villas, however, the joint venture continued to own and operate the property well beyond this two-year time frame. No refinancing ever occurred, and Downing testified that the property did not generate any profit and declined in value.

4

Shortly after the Riverdale Villas venture commenced, James took part in another venture with Downing and several others to purchase the Sheraton House Apartments, an apartment complex located in Forest Park, Georgia. On September 14, 2006, James wired Downing $400,000 for the down payment on Sheraton House. Although a portion of the money was later repaid to James, the venture retained $100,000, giving James a stake in the Sheraton House profits and losses. Downing testified that James was not a party to the co-tenancy agreement governing the Sheraton House venture, but the partnership "worked out some sort of creative deal where he would share in the profits and losses." Title to Sheraton House was placed in C&S, another limited liability corporation of which Downing was the manager and sole member.

Within a few months, James began asking Downing questions about the parties' respective financial stakes in the Sheraton House venture. He posed further questions to all of the partners regarding finances and the day-to-day operation of the business. In reply, Downing asked James to direct all questions to him, rather than to the other Sheraton House partners, since James was not a party to the co-tenancy agreement.

Eventually, James became frustrated with what he viewed as a lack of response to his inquiries. James demanded return of the funds he had invested in the Sheraton House venture, plus interest. No funds were returned. At the time of Downing's deposition, C&S still owned Sheraton House, but the property was on the verge of foreclosure. Although the property had a positive cash flow, two of the venture's other partners had removed $60,000 from the operating account without consulting Downing or James.

With both ventures struggling financially, James, Shannon, and SMC sued the defendants for breach of contract, fraud, and other claims. 6428 Church filed a counterclaim against Shannon for breach of the co-tenancy agreement. Downing and 6428 Church also alleged a counterclaim against Shannon and SMC for litigation expenses. The defendants moved for summary judgment on the fraud allegations, and Shannon and SMC filed a cross-motion for summary judgment on the counterclaims. The trial court granted each motion. These appeals followed.

*Case No. A19A0963*

1. For ease of discussion, we will first address Case No. A19A0963, in which Shannon and SMC challenge the trial court's order granting Downing and 6428 Church summary judgment on their fraud claim. With respect to this claim, Shannon

6

and SMC alleged that before Shannon invested in the Riverdale Villas venture, Downing and 6428 Church falsely promised that her investment would be repaid within two years, that she would gain certain tax advantages from the investment, and that she would receive a specified rate of return on her investment. Shannon and SMC further alleged that she relied upon these misrepresentations in deciding to invest.

Generally, a false representation is actionable in fraud only if it relates to an existing fact or past event. See *Infrasource v. Hahn Yalena Corp.*, 272 Ga. App. 703, 707 (2) (613 SE2d 144) (2005). Opinions, predictions, and conjecture regarding future events do not give rise to a fraud claim. See id. As we have explained, "[f]raud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events. Representations concerning expectations and hopes are not actionable." Id. (citation and punctuation omitted). See also *Hamilton v. Advance Leasing & Rent-A-Car*, 208 Ga. App. 848, 850 (2) (432 SE2d 559) (1993) ("[A]ctionable fraud [does not] result from a mere failure to perform promises made. Otherwise any breach of a contract would amount to fraud.") (citations and punctuation omitted).

The alleged misrepresentations in this case involve promises as to future events, specifically, the eventual repayment of Shannon's investment and the benefits

7

she and her company would ultimately reap from participating in the venture. Nevertheless, Shannon and SMC argue that the promises are actionable because Downing and 6428 Church made them with a present intention not to perform. It is true that "promises with no present intent to perform are actionable." *Infrasource*, supra. A misrepresentation regarding future events may give rise to a fraud claim "where the promisor knows, at the time of the misrepresentation, that the future event will not take place." *Pacrim*, supra at 767 (3). The issue, therefore, is whether these defendants made promises about repayment of and return on Shannon's investment without any intention of performing as promised. See id.

The record contains no evidence of such fraudulent intent. Downing testified that he always viewed the Riverdale Villas venture as a "one to two-year type of investment." Although the venture did not end within the time frame expected by the parties, Shannon and SMC have not pointed to any proof that Downing and 6428 Church intended for the venture to extend beyond the anticipated period. Rather, the record shows that in May 2008 – less than two years after Shannon invested in Riverdale Villas – Downing suggested to James, who was acting as Shannon's representative, that the property "should be listed for sale and sold right away." James

8

agreed that the property should be sold, but indicated that delaying the sale "for at least three months" would be best for the venture.

Similarly, nothing in the record supports the conclusion that, at the time Shannon joined the venture in 2006, Downing and 6428 Church intended or knew that she would not receive her promised benefit or return from the investment. Downing asserted that he did not expect the project to fail, but the venture had difficulty finding "quality" tenants for the property and "getting the . . . occupancy up to where it should be." Moreover, James testified that the value of Riverdale Villas "trend[ed] down quite rapidly" in 2008, as financial markets began collapsing. Ultimately, Riverdale Villas performed poorly and often did not generate sufficient funds to pay property expenses, requiring Downing to make contributions to the venture's account just to "keep the property operative."

On appeal, Shannon and SMC note that "[f]raudulent intent at the time of contracting can be inferred based on subsequent conduct of the defendant that is unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith." *BTL COM Ltd. v. Vachon,* 278 Ga. App. 256, 261 (1) (628 SE2d 690) (2006). They further argue, based on vague deposition testimony from Downing, that the defendants admittedly misappropriated Shannon's

9

capital contribution for their own benefit, raising a question of fact as to fraudulent intent. We disagree.

Downing testified that Shannon's capital investment was to be used to repay James for money he had loaned to the Riverdale Villas venture and to finance renovations at the property. To this end, Downing sent approximately one-half of the capital investment to James. As to the remaining investment, Downing stated, "[t]hose funds most likely went into the property," but he could not be more certain in his testimony because he did not "have an accounting in front of [him] of those funds" at the deposition. Upon further questioning, Downing testified that the remaining funds were spent on the "rehabilitation effort" at Riverdale Villas, although he could not specifically recall if all was used for the renovations. He admitted that there was "a possibility" some of the funds had been used to finance another investment. Asked why the money might have been used for a different investment, Downing responded: "We would have to look at the context of the emails [between the parties] and the way the whole deal was structured to answer that question." He later clarified that he did not think Shannon's investment funds were "used for any purpose other than Riverdale Villas[.]"

Such testimony does not demonstrate that Downing and/or 6428 Church misappropriated Shannon's invested funds for their own personal use. At most, Downing conceded that the venture participants (which included James and Shannon) may have decided to use some of the money for an outside purpose. But he did not believe that this had occurred, and Shannon and SMC have put forth no evidence that it did.

Shannon and SMC have not pointed to any testimony, financial records, or other evidence from which a jury could reasonably find fraudulent intent. We recognize that the venture was not successful, and James testified that Downing failed to fulfill his agreed-upon obligations to Shannon and SMC. But the evidence does not support any conclusion that Downing and/or 6248 Church intended not to perform at the time they allegedly made promises regarding Shannon's investment. The trial court, therefore, properly granted summary judgment to Downing and 6428 Church on Shannon and SMC's fraud claim. See *Pacrim*, supra at 767 (3) (trial court properly granted summary judgment to defendant on fraud claim involving alleged misrepresentation of future events; the evidence, which might have supported a claim for breach of contract, did not demonstrate a present intention not to perform at the time the promise was made); Compare *Gunnin v. Dement*, 205 Ga. App. 631, 634 (2)

11

(422 SE2d 893) (1992) (affirming denial of motion for directed verdict where jury authorized to find fraud based on unfulfilled promises regarding business investment; although promises related to future events, evidence that defendants made no serious effort to expand business as promised and utilized invested money for personal expenditures raised question of fact as to intent to deceive or not perform).

*Case No. A19A0931*

2. We reach the same conclusion in Case No. A19A0931, which challenges the trial court's grant of summary judgment to the defendants on James's fraud claim. With respect to fraud, James asserted that Downing promised to transfer to him an ownership interest in the profits and losses on the Sheraton House venture, but failed to do so. He further alleged that Downing made this promise to fraudulently induce his investment in the project. At deposition, James clarified Downing's promise as follows:

> [F]or my hundred thousand dollars, I was supposed to get a 15th percent share of the profits and losses . . . related to Sheraton House. When I say supposed to, it was all verbal and nothing was written down. And I was supposed to get – it was essentially 15 percent of the profits and losses of Sheraton House.

12

This alleged promise related to a future event – the eventual allocation of profits and losses generated by Sheraton House. And once again, the evidence does not support the conclusion that Downing made the promise with a present intention not to perform. In fact, James has not pointed to any evidence that the defendants deprived him of his "share in the profits and losses" of Sheraton House. The venture still owned and operated Sheraton House at the time James filed his complaint. Although James asserted at his deposition that Downing "hasn't paid me anything," he cited no proof that the Sheraton House property had generated any profits that should have been distributed to him. Moreover, he presented no evidence that the defendants appropriated Sheraton House funds for their own personal benefit.[4]

On appeal, James complains that Downing failed to include him in the written co-tenancy agreement governing the Sheraton House venture and did not otherwise provide him with requested documentation or a written agreement outlining his interest. Downing's alleged promise, however, did not require James's inclusion in the co-tenancy agreement, and it did not compel written documentation of his

---

[4] At some point, two other investors who managed the property removed $60,000 from the Sheraton House account for their own use. Downing testified that this withdrawal was unauthorized and that he took steps to preclude further improper withdrawals, such as by placing certain Sheraton House funds into an escrow account. James offered no contrary evidence.

participation in the venture. On the contrary, James admitted that everything relating to his investment was "verbal."

Undoubtedly, James is dissatisfied with the manner in which Downing operated the Sheraton Homes venture, and his complaint asserts other claims relating to that conduct. But he has presented no evidence from which a jury could reasonably conclude that the defendants promised him a share of the Sheraton House profits and losses without intending to perform as promised. The trial court, therefore, properly granted summary judgment to the defendants on James's fraud claim. See *Pacrim*, supra.

*Case No. A19A0930*

3. In Case No. A19A0930, the defendants argue that the trial court erred in granting Shannon summary judgment on 6428 Church's counterclaim for breach of the Riverdale Villas co-tenancy agreement.[5] We agree.

---

[5] 6428 Church alleged its breach of contract counterclaim solely against Shannon. The counterclaim does not include SMC, presumably because SMC was not a party to the co-tenancy agreement. Both in the trial court and on appeal, however, the parties often failed to specify which claims and arguments apply to which party. As a result, it appears that the trial court may have inadvertently included SMC in its grant of summary judgment on this counterclaim. 6428 Church has not argued that it asserted a breach of contract claim against SMC or that such claim has merit. Accordingly, to the extent the trial court granted summary judgment to SMC on this

14

6428 Church asserted that Shannon breached the co-tenancy agreement by not paying her share of the Riverdale Villas operating expenses, thereby saddling 6428 Church with more than its share of the expenses. Shannon admittedly never made any payments to the Riverdale Villas venture other than those associated with acquiring a 70 percent interest in the property. And 6428 Church offered evidence that Downing, its sole member, deposited significant sums into the venture's operating account to pay the property's expenses. Nevertheless, Shannon moved for summary judgment on this counterclaim, arguing that 6428 Church had "adduced absolutely no evidence supporting a calculation or itemization of damages[.]" The trial court granted the motion.

"Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2. The evidence in this case raises a jury question as to whether Shannon's alleged breach of the co-tenancy agreement forced 6428 Church to fully fund operating expenses that should have been shared by Shannon. Although Shannon complains that 6428 Church failed to sufficiently prove the specific claim, we find no error.

15

expenses it incurred, "the lack of evidence regarding the actual amount of damages is not dispositive on a motion for summary judgment in a breach of contract case." *Eastview Healthcare v. Synertx*, 296 Ga. App. 393, 398 (4) (674 SE2d 641) (2009). "This is because . . . in every case of breach of contract, the injured party has a right to damages, but, if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." Id. at 399 (4) (citations and punctuation omitted).

The record contains evidence from which a jury could award 6428 Church damages (either actual or nominal) from Shannon's alleged breach of the co-tenancy agreement. The trial court, therefore, erred in granting Shannon summary judgment on this counterclaim. See *Eastview Healthcare*, supra.

4. The defendants further argue that the trial court erred in granting Shannon and SMC summary judgment on the litigation expense counterclaim asserted by Downing and 6428 Church. As pled, the counterclaim has two facets. First, 6428 Church alleged that Shannon is liable for litigation expenses under Paragraph 18 (g) of the co-tenancy agreement, which provides for recovery of such expenses by the prevailing party in any litigation involving the agreement. Second, Downing and 6428 Church asserted that Shannon and SMC have acted in bad faith and been

16

stubbornly litigious, entitling them to an award of litigation expenses pursuant to OCGA § 13-6-11.[6] The trial court granted Shannon and SMC summary judgment on both facets of this counterclaim, concluding that "[a]s [d]efendants' underlying claim for breach of the [c]o-[t]enancy agreement fails, so does their derivative claim for attorney's fees."

(a) This ruling was error and must be reversed as to 6428 Church's counterclaim for litigation expenses against Shannon. As found in Division 3, Shannon was not entitled to summary judgment on the counterclaim for breach of contract. And questions of fact remain with respect to 6428 Church's derivative counterclaim for litigation expenses, particularly regarding paragraph 18 (g) of the co-tenancy agreement. Summary judgment, therefore, was improper as to this counterclaim.

(b) The trial court, however, correctly granted summary judgment to SMC on 6428 Church's counterclaim for litigation expenses, which is based solely on OCGA § 13-6-11. As we have noted, this code section "does not permit the recovery of

---

[6] "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." OCGA § 13-6-11.

17

expenses incurred in *defending* a lawsuit." *Dennis-Smith v. Freeman*, 277 Ga. App. 822, 825 (3) (627 SE2d 872) (2006) (citations omitted; emphasis in original). The record shows that 6428 Church did not assert a substantive counterclaim against SMC. Accordingly, because 6428 Church is merely a defendant as to SMC, its claim for litigation expenses against the company fails as a matter of law. See *Dennis-Smith*, supra; *Langley v. Nat. Labor Group*, 262 Ga. App. 749, 754 (3) (586 SE2d 418) (2003) ("[A] defendant may only assert a counterclaim under OCGA § 13-6-11 if it has a viable independent counterclaim[.]").

(c) The same fatal flaw undermines Downing's counterclaim against Shannon and SMC for litigation expenses under OCGA § 13-6-11. Downing is not a party to 6428 Church's counterclaim for breach of contract or any other substantive counterclaim. He is merely a defendant. Shannon and SMC, therefore, were entitled to summary judgment on his litigation expense counterclaim. See *Dennis-Smith*, supra; *Langley*, supra.

*Judgments in Case Nos. A19A0931 and A19A0963 affirmed. Case No. A19A0930 affirmed in part and reversed in part. Barnes, P. J., and Brown, J., concur*.

18